IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 11-908 (SLR) |
| MOTOROLA MOBILITY LLC, | ) ) | **REDACTED -** |
| Defendant. | ) ) | **PUBLIC VERSION** |

**DEFENDANT MOTOROLA MOBILITY LLC'S OPENING BRIEF
IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE
THE TESTIMONY OF PLAINTIFFS' EXPERTS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com
*Attorneys for Defendant Motorola Mobility LLC*

OF COUNSEL:

William H. Boice
Candice Decaire
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309
(404) 815-6500

Steven Moore
Alton Absher III
Carl Sanders
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
(336) 607-7300

Original Filing Date:  July 26, 2013
Redacted Filing Date:  August 7, 2013

# TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF THE PROCEEDING...................................................1

II.     SUMMARY OF ARGUMENT ..............................................................................1

III.    STATEMENT OF FACTS .....................................................................................2

IV.     ARGUMENT .........................................................................................................2

        A.      LEGAL STANDARD....................................................................................2

        B.      THE OPINIONS OF IV'S TECHNICAL EXPERTS
                REGARDING SECONDARY CONSIDERATIONS OF
                NON-OBVIOUSNESS SHOULD BE EXCLUDED. ....................................3

                1.      The Opinions of IV's Technical Experts Regarding
                        Licenses are Unreliable and Should be Excluded.............................4

                2.      The Opinions of IV's Technical Experts Regarding
                        Commercial Success are Unreliable and Should be
                        Excluded. .........................................................................................8

                3.      The Opinions of IV's Technical Expert Dr. Alpert
                        Regarding Alleged Copying of the '462 Patent are
                        Unreliable and Should be Excluded..................................................11

        C.      THE OPINIONS OF DR. GIBSON REGARDING THE
                ALLEGED APRIL 17, 1998 PRIORITY DATE OF THE
                '450 PATENT SHOULD BE EXCLUDED. .................................................11

V.      CONCLUSION........................................................................................................14

# TABLE OF AUTHORITIES

<u>Page</u>

CASES

*Cellectis S.A. v. Precision Biosciences, Inc.*,
   C.A. No. 11-173-SLR, 2013 WL 1415609 (D. Del. Apr. 9, 2013) ........................................14

*Cordance Corp. v. Amazon.com, Inc.*,
   631 F. Supp. 2d 477 (D. Del. 2009) ........................................................................................3

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993) ........................................................................................................2, 3, 14

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3rd Cir. 2000) .................................................................................................2

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................................................3

*In re GPAC, Inc.*,
   57 F.3d 1573 (Fed. Cir. 1995) ...............................................................................................4

*In re Paoli R.R. Yard PCB Litig.*,
   35 F.3d 717 (3d. Cir. 1994) ....................................................................................................3

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
   392 F.3d 1317 (Fed. Cir. 2004) .........................................................................................4, 11

*John E. Thropp's Sons Co. v. Seiberling*,
   264 U.S. 320 (1924) ................................................................................................................8

*Kannankeril v. Terminix Int'l, Inc.*,
   128 F.3d 802 (3d. Cir. 1997) ..................................................................................................2

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ...........................................................................................................2, 3

*Ladatech, LLC v. Illumina, Inc.*,
   C.A. No. 09-627-SLR, 2012 WL 2153646 (D. Del. Jan. 24, 2012) ......................................10

*Micro Chem, Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003) ..............................................................................................2

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006) ..............................................................................................9

## TABLE OF AUTHORITIES
(continued)

Page

*Rambus Inc. v. Hynix Semiconductor, Inc.*,
    254 F.R.D. 597 (N.D. Cal. 2008)........................................................................................8, 11

*Sundance, Inc. v. Demonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008)............................................................................................2

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
    699 F.3d 1340 (Fed. Cir. 2012)............................................................................................8

*W. Union Co. v. MoneyGram Payment Sys., Inc.*,
    626 F.3d 1361 (Fed. Cir. 2010)............................................................................................4

**OTHER AUTHORITIES**

Federal Rule of Evidence 702............................................................................................2

## I.      NATURE AND STAGE OF THE PROCEEDING

Intellectual Ventures I and Intellectual Ventures II ("IV") allege infringement of six patents ("the patents-in-suit") by Motorola Mobility LLC ("Motorola").  Motorola has asserted, among other things, defenses and counterclaims of invalidity, including that the asserted claims are obvious in light of the prior art.  Fact and expert discovery are now complete, and this case is set for trial in January 2014. (D.I. 16.)

IV has offered the testimony of five technical experts on the alleged validity of the patents-in-suit.  Motorola now files a *Daubert* motion to exclude their testimony concerning secondary considerations of non-obviousness.  Motorola also moves to exclude the testimony of one expert concerning the alleged priority date of one of the patents-in-suit.  This is Motorola's opening brief in support of that motion.

## II.     SUMMARY OF ARGUMENT

IV has proffered the testimony of five technical experts on the alleged validity of the Patents-in-Suit.  IV's experts not only opine on technical matters underlying the invalidity issues, but also opine that the asserted patents are not obvious based, in part, on alleged secondary evidence of license agreements, commercial success, and copying. But with respect to these opinions, IV's experts perform no analysis whatsoever to connect any evidence to the features of the asserted claims or the alleged practice of those claims.  Accordingly, Motorola now moves to exclude the testimony of IV's technical experts—Dr. Hugh Smith, Dr. Darran Cairns, Dr. Robert Alpert, Dr. Jason Nieh, and Dr. Jerry Gibson—concerning their opinions regarding secondary considerations of non-obviousness because those opinions are conclusory and, as the experts themselves admit, unsupported by any analysis of any purported nexus between the claimed inventions and the alleged evidence of these secondary considerations. Additionally, with respect to his opinions concerning priority dates, Dr. Gibson lacks the

expertise to offer those opinions which are founded on sheer speculation.

Thus, the opinions of Drs. Smith, Cairns, Alpert, Nieh, and Gibson regarding secondary considerations of non-obviousness, and of Dr. Gibson regarding priority date issues, should be excluded because they fail to satisfy the requirements set forth in Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

## III.   STATEMENT OF FACTS

The relevant facts will be included in the Argument sections, as appropriate.

## IV.   ARGUMENT

### A.   LEGAL STANDARD

Federal Rule of Evidence 702 allows testimony based on "scientific, technical, or other specialized knowledge" by a qualified expert if it "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. A qualified expert may provide opinion testimony if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts" of the case. *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1359-60 (Fed. Cir. 2008); *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3rd Cir. 2000) (holding that "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit"). Any such opinion testimony is admissible only if it is both relevant and reliable. *Daubert*, 509 U.S. at 589.

A district court's decision in a patent case whether to admit expert testimony under *Daubert* follows the law of the regional circuit. *Micro Chem, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003). Trial judges act as a "gatekeeper" to ensure that "any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d. Cir. 1997) (citing *Daubert,* 509 U.S. at 589); *Kumho Tire Co.*

*v. Carmichael*, 526 U.S. 137, 147-48 (1999). "*Daubert's* gatekeeping requirement .... make[s] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field...." *Kumho Tire*, 526 U.S. at 152; *see also id.* at 158-59 (Scalia, J., concurring) ("I join the opinion of the Court, which makes clear that the discretion it endorses-trial-court discretion in choosing the manner of testing expert reliability-is not discretion to abandon the gatekeeping function."). Thus, *Daubert* not only requires that there be an analysis by the expert, but that the analysis be of the same intellectual rigor that the expert would use outside of litigation.

The proponent of an expert's testimony bears the burden of establishing the admissibility of the testimony by a preponderance of the evidence. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d. Cir. 1994); *Cordance Corp. v. Amazon.com, Inc.*, 631 F. Supp. 2d 477, 479 (D. Del. 2009). To properly carry its burden, the proffered expert testimony must be "sufficiently tied to the facts of the case." *Daubert*, 509 U.S. at 591. If IV fails to tie the expert testimony to the facts of the case, the testimony must be excluded. *See, e.g., Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143-46 (1997).

### B.   THE OPINIONS OF IV'S TECHNICAL EXPERTS REGARDING SECONDARY CONSIDERATIONS OF NON-OBVIOUSNESS SHOULD BE EXCLUDED.

Each of IV's experts provides nearly the exact same opinion regarding commercial success and licensing, despite the differences among the patents-in-suit. Yet none of IV's experts provides any analysis that links any supporting evidence to their conclusions that the ***claimed inventions*** have been commercially successful or were licensed because of their value. This lack of analysis is critical because it does not rise to the level of intellectual rigor that one would use outside the courtroom in scientific study. *Kumho Tire*, 526 U.S. at 152.

IV's legal positions regarding secondary considerations also require that IV prove that a nexus exists between the alleged secondary considerations evidence and the underlying claimed inventions.  *See In re GPAC, Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) ("Licenses taken under the patent in suit may constitute evidence of nonobviousness; however, only little weight can be attributed to such evidence if the patentee does not demonstrate a nexus between the merits of the invention and the licenses of record."); *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1372-73 (Fed. Cir. 2010) ("Our case law clearly requires that the patentee must establish a nexus between the evidence of commercial success and the patented invention."); *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004).  Thus, for IV's experts to provide opinion testimony on issues of secondary considerations, they must expressly link the evidence they rely on as showing secondary considerations to the claimed features of the patents-in-suit.  However, IV's experts provide no such analysis or opinion, and in fact performed no relevant investigation, of the nexus requirement for secondary considerations.  Accordingly, their opinions should be excluded.

Likewise, Dr. Alpert's opinions regarding copying are void of the requisite intellectual rigor to be deemed to fit or be sufficiently reliable as expert testimony and thus must also be excluded.

### 1.    The Opinions of IV's Technical Experts Regarding Licenses are Unreliable and Should be Excluded.

Each of IV's experts provides conclusions regarding purported secondary considerations of non-obviousness with respect to licensing of each Patent-in-Suit. (*See* Smith Rebuttal Report, Ex. 1, ¶¶ 260-274; Cairns Rebuttal Report, Ex. 2, ¶¶ 173-184; Alpert Rebuttal Report ¶¶ 9.1-9.11, Ex. 3; Nieh Rebuttal Report, Ex. 4, ¶¶ 315-331; Gibson Rebuttal Report, Ex. 5, ¶¶ 232-244.) Specifically, each expert simply cites generic evidence that one or more

entities obtained a license to each patent-in-suit. (*See* Smith Rebuttal Report, Ex. 1, ¶¶ 271-272; Cairns Rebuttal Report, Ex. 2, ¶¶ 182-183; Alpert Rebuttal Report ¶¶ 9.10, Ex. 3; Nieh Rebuttal Report, Ex. 4, ¶¶ 327; Gibson Rebuttal Report, Ex. 5, ¶¶ 241-243.) Each expert opines that these licenses are objective indicia of the patent's non-obviousness in light of the prior art asserted by Motorola, because they allege that one or more of the Patents-in-Suit was identified during negotiations as a patent that the licensees may infringe or otherwise need to license. (*See id.*)

For example, but certainly not the only duplication, Drs. Smith and Cairns have nearly identical language concerning the licensure of the '144 patent and '953 patents, respectively:



(Smith Rebuttal Report, Ex. 1., ¶¶ 268-69)



(Cairns Rebuttal Report, Ex. 2., ¶¶179-80)

From these general summaries, each of IV's experts come to the same conclusion.  For example, Dr. Cairns states:

> 184. For the foregoing reasons, I believe that the licensing of the '953 patent, particularly as it relates to ███████████, is objective indicia that the '953 patent is not obvious in light of the prior mi asserted by Motorola.

(*Id.*, ¶ 184)

But the leap from these facts to such bald conclusions is inappropriate given the lack of analysis, specifically when that lack of analysis means the experts failed to consider highly relevant facts and data.  For instance, the companies that obtained licenses to certain of the patents-in-suit did not merely license one patent on its own—or even just six patents (as in the present case)—from IV.  Rather, IV owns ████████████████, and the licensed company ████████████████████ (Weisfield Dep., 49:5-50:19; Ex. 6.) The IV experts cite to absolutely no evidence the licensed company believed it needed to license a particular Patent-in-Suit specifically, or that the patent was determinative in the negotiations in terms of the ultimate royalties paid.

Further, IV's experts do not even say how many total patents each company licensed from IV, nor make any effort to determine the amount of the total licensing fees that should be attributed to any particular Patent-in-Suit.[1]  Indeed, some of IV's experts did not even consider

---

[1] In fact, despite this Court's May 1 and 7 discovery hearings and the orders that resulted from those hearings, IV has persisted in its refusal to produce to Motorola the total number of patents

this threshold issue. For example:

- Dr. Alpert did not have any opinion on ████████████████████████ *See* Ex. 7 at 290:14-18 ████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████

- Dr. Cairns engaged in no analysis of the ████████████████████ *See* Ex. 8 at 241:11-17 ████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████

- Dr. Smith admitted that he did not consider the ██████████████ ████████ *See* Ex. 9 at 160:24-161:4 ██████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ██████████████████████████████

- IV's other experts likewise fail to address this issue.  *See also* Nieh Rebuttal Report, Ex. 4, ¶¶ 323-331; Gibson Rebuttal Report, Ex. 5, ¶¶ 237-244.

Without this information, there is no way for a finder of fact to determine whether any

---

in the relevant licenses.  The parties continue to discuss IV's failure to do so, and if they are not able to resolve the issue Motorola will need to raise it again with the Court.

license has any probative value as a secondary consideration. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1353 (Fed. Cir. 2012); *John E. Thropp's Sons Co. v. Seiberling*, 264 U.S. 320, 329-30 (1924) (noting that when a license has a low royalty rate, a "purchase of peace" may be the motivation for a small business and therefore the license is of limited value as evidence of a patent's validity). Depending on how many patents are actually covered by the license, the price per patent may be extremely low, suggesting that the Patents-in-Suit were not licensed because of any merit of their claimed inventions. Because IV's experts engage in absolutely no analysis on this point, their opinions have no ties to the actual facts of the case, are unreliable, and should be excluded.

This level of intellectual rigor, or more specifically this lack of rigor, has resulted in the proper exclusion of such opinion before. *See Rambus Inc. v. Hynix Semiconductor, Inc.*, 254 F.R.D. 597, 601-606 (N.D. Cal. 2008) (excluding similar conclusion concerning licensing because "[i]t is difficult to describe Mr. Murphy's two paragraphs as 'analysis.' He has not scrutinized the licenses with the same rigor applied by professionals . . . ."). The same is true here.

### 2.    The Opinions of IV's Technical Experts Regarding Commercial Success are Unreliable and Should be Excluded.

Each IV expert further opines regarding the alleged commercial success of the inventions of the Patents-in-Suit. For example:



- Smith Report, Ex. 1 at ¶ 265, the "███████████████████████████████████████████████████████████████████████████████████████;"

- Cairns Report, Ex. 2 at ¶ 177, "███████████████████████████████████████████████



;"

- Alpert Report, Ex. 3 at ¶ 9.3. "

;"

- Nieh Report, Ex. 4, at ¶ 320 that "

;"

- Gibson Report, Ex. 5 at ¶ 236 "

."

IV's experts do not, however, analyze whether any factors other than the alleged infringement of the patents-in-suit (which Motorola disputes to exist) are responsible for any commercial success of Motorola products.  And mere sales success of an accused product is insufficient to establish commercial success – the patentee must prove that the success is because of the claimed invention.  *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) (stating that "if the commercial success is due to an unclaimed feature of the device, the commercial success is irrelevant," or "if the feature that creates the commercial success was known in the prior art, the success is not pertinent.").

Not only do IV's experts engage in no analysis of this issue in their respective reports, but many admit that they did no analysis. Specifically, IV's experts cite no evidence showing that any purchaser of a Motorola phone, or any phone for that matter, purchased a phone because the accused function performed as purported to be claimed in the Patents-in-Suit. For example:

- Dr. Cairns did not determine whether the Motorola phones sold due to the presence of a backlight system, the patented feature. *See* Ex. 8 at 237:16-22 

”); 238:5-11 (“Q:

”).

- Dr. Smith did not compare the claims of the '144 patent to the products of IV's licensees upon whose success he relies. *See* Ex. 9 at 163:16-24

.”).

- IV's other experts likewise fail to address this issue. *See also* Alpert Report, Ex. 3 at ¶¶ 9.1-9.3; Nieh Report, Ex. 4, at ¶ 318-322; Gibson Report, Ex. 5 at ¶ 235-236.

Absent analysis of a nexus and corresponding data, IV's experts' unsupported conclusory statements lack the intellectual rigor necessary for an expert to express these opinions to the jury. *Compare Ladatech, LLC v. Illumina, Inc.*, C.A. No. 09-627-SLR, 2012 WL 2153646, at *1 (D. Del. Jan. 24, 2012) (holding that the expert engaged in proper analysis by establishing a nexus between the commercial success of the accused products and methods

and the claimed features), *with Rambus*, 254 F.R.D. at 601-606 (finding similar analysis too sparse to address nexus).  This Court should therefore exercise its gatekeeper function and exclude this unsupported testimony from being considered on summary judgment or presented to the jury.

> **3.      The Opinions of IV's Technical Expert Dr. Alpert Regarding Alleged Copying of the '462 Patent are Unreliable and Should be Excluded.**

Dr. Alpert opines that Motorola copied the '462 patent in drafting one of its own patent applications and in describing Motorola's Lapdock products.  Dr. Alpert's opinion regarding Motorola's alleged copying of the '462 Patent is not tied to the facts of the case either.  All Dr. Alpert does is state that because Motorola sought patent protection for its own idea, Motorola must have copied.  (*See* Ex. 3 at ¶ 9.4.) But, as the Federal Circuit has noted, "[n]ot every competing product that arguably fa[l]ls within the scope of a patent is evidence of copying," because "[o]therwise every infringement suit would automatically confirm the nonobviousness of the patent." *Iron Grip,* 392 F.3d at 1325.  Dr. Alpert engages in no analysis to establish the actual existence of intentional copying—he simply relies on rote speculation based on Motorola's efforts to protect its own intellectual property—rendering his opinion prejudicial and inadmissible for these reasons as well.

> **C.      THE OPINIONS OF DR. GIBSON REGARDING THE ALLEGED APRIL 17, 1998 PRIORITY DATE OF THE '450 PATENT SHOULD BE EXCLUDED.**

As with his opinions on secondary considerations, Dr. Gibson lacks appropriate background with respect to—and provides no analysis regarding—his opinion of an April 17,

1998 priority date[2] for the '450 Patent. This opinion is based on his belief that a so-called "WINAAR PowerPoint Presentation," which on its face is dated January 5, 1999, was actually created on April 17, 1998 ("April 1998 Date"). Dr. Gibson lacks the expertise and technical understanding to perform the necessary computer forensic analysis to support his opinion that this Presentation was created in April 1998, and thus he is not competent to provide expert testimony regarding the purported April 1998 Date.

The totality of Dr. Gibson's analysis of the April 1998 Date is provided in two sentences:

> I examined a native copy of the PowerPoint presentation entitled, Introduction to the WINAAR™ System Architecture (the "WINAAR PowerPoint Presentation"). [IV-MMI-087113; JORGENSEN005675 - JORGENSEN005715.] Although the presentation shows a cover date of January 1999, I noted that the metadata indicates a creation date of April 17, 1998.

(Gibson Report, Ex. 5, ¶ 64.)

In stark contrast to the dozens of pages of purported analysis in his infringement report of the accused devices and the 3GPP and 3GPP2 standards, Dr. Gibson's two-sentence opinion on priority date provides no explanation of how he is qualified to perform a metadata analysis of the Presentation, which metadata he examined, how he determined that the metadata related to a "creation date," whether the metadata itself was accurate and had not been altered, and whether the metadata examined actually relates to the creation date of the WINAAR PowerPoint Presentation itself, or was simply an arbitrary date.

Dr. Gibson even admitted during deposition that he does not have familiarity with the source of the metadata in the Presentation and that he simply assumed the accuracy of the April

---

[2] IV previously had identified an alleged priority date for the '450 Patent of June 16, 1998 in its Interrogatory Responses dated February 21, 2013 (Ex. 10), but after reviewing Motorola's prior art, including Dr. Katz's expert report on invalidity, Dr. Gibson for the first time advocated for an earlier priority of April 17, 1998 in his expert report of June 7, 2013.

1998 Date without investigation:



(Gibson Dep. Tr. 244:18-245:6, Ex 11.)  Nor did Dr. Gibson did speak with the inventor, Jacob

Jorgensen, or anyone else at who worked with him, on this topic:



(Gibson Dep. Tr. 242:11-20, Ex. 11.)

   Thus, Dr. Gibson's opinion of an April 1998 creation date for the presentation at issue

is sheer speculation.  Dr. Gibson merely examined some metadata for the Presentation that

purportedly shows an April 17, 1998 date and simply assumed both that the April 1998 date

was the actual creation date of the WINAAR PowerPoint Presentation, and that the April 1998

Date was correct in the first place.  This total lack of analysis and factual basis renders Dr.

Gibson's opinion regarding the April 1998 Date unreliable.  "The subject of an expert's

testimony must be 'scientific ... knowledge.'  The adjective 'scientific' implies a grounding in

the methods and procedures of science. Similarly, the word 'knowledge' connotes ***more than subjective belief or unsupported speculation***." *Daubert*, 509 U.S. at 589-90 (emphasis added); *see also Cellectis S.A. v. Precision Biosciences, Inc.*, C.A. No. 11-173-SLR, 2013 WL 1415609, at *9 (D. Del. Apr. 9, 2013) ("An expert's opinion is reliable if it is based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief.'") (citing *In re Paoli*, 35 F.3d at 742 (quoting *Daubert*)).

Dr. Gibson's lack of familiarity with, and analysis of, metadata is not surprising given his background.  Although he has experience in technical fields relating to signal processing and compression of multimedia data, there is nothing in his background that suggests he has any capability to perform computer forensic analysis, as he purports to do here.  And as evidenced by his testimony quoted above, Dr. Gibson admits that he does not have an understanding of how the metadata would have been created.  Further, as he admits above, he did not even undertake an analysis to determine the accuracy of the purported creation date; he simply assumed that it was correct.

In sum, Dr. Gibson's opinion regarding the April 1998 Date of conception is devoid of analysis and wholly unreliable.  The Court should exclude his opinion and testimony regarding the April 1998 Date.

## V.    CONCLUSION

For the reasons stated above, the Court should exclude the opinions of IV's experts, Drs. Smith, Cairns, Alpert, Nieh, and Gibson regarding secondary considerations of non-obviousness and Dr. Gibson's opinion regarding the April 1998 Date.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Stephen J. Kraftschik*

Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com
*Attorneys for Defendant Motorola Mobility LLC*

OF COUNSEL:

William H. Boice
Candice Decaire
D. Clay Holloway
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA  30309
(404) 815-6500

Steven Moore
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
(336) 607-7300

July 26, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 7, 2013, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                    *VIA ELECTRONIC MAIL*
Rosemary J. Piergiovanni, Esquire
FARNAN LLP
919 North Market Street
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Ian N. Feinberg, Esquire                                    *VIA ELECTRONIC MAIL*
Margaret Elizabeth Day, Esquire
David L. Alberti, Esquire
Clayton Thompson, Esquire
Marc C. Belloli, Esquire
Sam Lim, Esquire
Yakov Zolotorez, Esquire
Leonard J. Augustine, Jr., Esquire
Peter Mikhail, Esquire
James Hall, Esquire
FEINBERG DAY ALBERTI & THOMPSON LLP
1600 El Camino Real
Menlo Park, CA  94025
*Attorneys for Plaintiffs*

/s/ *Stephen J. Kraftschik*
_____
Stephen J. Kraftschik (#5623)

- 16 -