Continuation of 5. Claims rejected are: 1,2,4-15,18-21,23-34,37-40,42,43,46,50,51,53,56,58,59,61,62,65,69,70,72,75 and 79-86.

Application/Control Number: 95/002,095                                      Page 2
Art Unit: 3992

**Right of Appeal Notice**

An Action Closing Prosecution mailed 05/01/2013.  No Patent Owner response has been

received.

As summarized in the ACP (05/01/2013), which is hereby incorporated by reference:

(ACP, p. 43) Claims 1-2, 4-15, 18-19, 20-21, 23-34, 37-38, and 83-84 are finally rejected under

102(b) as anticipated by Ogaki.

The rejections of claims 3, 16, 17, 22, 35, 36, 39-57, and 58-78 under 102(b) as anticipated

by Ogaki are withdrawn.

(ACP, p. 61)  Claims 79-80 & 83-84 are rejected under 35 USC 102(b) as anticipated by Bowen

1991.  There are no proposed rejections for new claims 81-82 and 85-86 based on Bowen 1991

(as there are no rejections for parent independent claims 39 and 58).

Claims 1-2, 4-11, 19-21, 23-30, 38, 79-80 and 83-84 are finally rejected under

35 U.S.C. § 102(b) over Bowen 1991.

(ACP, p. 80)  Claims 1, 2, 4, 5, 8, 12, 13, 15, 18, 20, 21, 23, 24, 27, 31, 32, 34, 37, 79-80 and 83-

84 are finally rejected under 35 U.S.C. § 102(b) over the Grube '067 patent.

Application/Control Number: 95/002,095                                    Page 3
Art Unit: 3992

Claims 39, 40, 42, 43, 46, 50, 51, 53, 56, 58, 59, 61, 62, 65, 69, 70, 72, 75, 81-82 and 85-86 are

finally rejected under 35 U.S.C. § 103(a) over the <u>Grube '067 patent in view of HTML</u>.

(ACP, p. 81)  **The following claims are confirmed** (withdrawn from rejection as anticipated by

Ogaki and not proposed for rejection as anticipated by Bowen 1991 or Grube '067, or the

obvious combination of Grube '067 and HTML):

**Claims 3, 16, 17, 22, 35, 36, 41, 44, 45, 47, 48, 49, 52, 54, 55, 57, 60, 63, 64, 66, 67, 68,**

**71, 73, 74, 76, 77, and 78 are confirmed.**

The reasons for confirmation are explicit in the ACP (05/01/2013).

Rejections, as stated in the ACP, are maintained in this RAN office action.

Examiner suggests that Patent Owner may choose to amend what appears to be a clear omission

in claim 36: "The software product as set forth in claim 20 wherein the communications network

is the Internet."

**Information Disclosure Statement**

IDS received 06/03/2013, 06/25/2013, and 07/02/2013 has been entered into the record. "With

respect to the **Information Disclosure Statements** (PTO/SB/08A and 08B or its equivalent)

considered with this action, the information cited has been considered as described in the MPEP.

Note that MPEP 2256 and 2656 indicate that degree of consideration to be given to such

information will be normally limited by the degree to which the party filing the information

Application/Control Number: 95/002,095                                    Page 4
Art Unit: 3992

citation has explained the content and relevance of the information. A concise explanation of the

relevance, as it is presently understood by the individual designated in § 1.56(c) most

knowledgeable about the content of the information, of each patent, publication, or other

information listed that is not in the English language may be either separate from applicant's

specification or incorporated therein.

## Relevant Litigation

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a), to apprise

the Office of any litigation activity, or other prior or concurrent proceeding throughout the

course of this reexamination proceeding.  See MPEP §§ 2207, 2282 and 2286.  Pursuant to 37

CFR 1.985(a), the patent owner in an inter partes reexamination proceeding must promptly

notify the Office of any Federal Court decision involving the patent.  Upon the issuance of a

holding of claim invalidity or unenforceability by a Federal Court, reexamination of those claims

will continue in the Office until the decision becomes final.  MPEP 2686.04


This inter partes reexamination (95/002095, USPN 6658644 B2 to Reisman) is related to inter

partes reexamination 95/002093 (USPN 6,557,054 to Reisman), in which all claims under

reexamination are rejected.

## Extensions of Time

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the

provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination

Application/Control Number: 95/002,095                                    Page 5
Art Unit: 3992

proceeding. Additionally, 35 U.S.C. 314(c) requires that *inter partes* reexamination proceedings

"will be conducted with special dispatch" (37 CFR 1.937). Patent owner extensions of time in

*inter partes* reexamination proceedings are provided for in 37 CFR 1.956. Extensions of time are

not available for third party requester comments, because a comment period of 30 days from

service of patent owner's response is set by statute. 35 USC 314(b)(3).

**Service of Papers**

Any paper filed with the USPTO, i.e., any submission made, by either the Patent Owner or the

Third Party Requester must be served on every other party in the reexamination proceeding,

including any other third party requester that is part of the proceeding due to merger of the

reexamination proceedings. As proof of service, the party submitting the paper to the Office must

attach a Certificate of Service to the paper, which sets forth the name and address of the party

served and the method of service. Papers filed without the required Certificate of Service may be

denied consideration. 37 CFR 1.903; MPEP 2666.06.

**Conclusion**

This is a RIGHT OF APPEAL NOTICE (RAN); see MPEP § 2673.02 and § 2674. The decision

in this Office action as to the patentability or unpatentability of any original patent claim, any

proposed amended claim and any new claim in this proceeding is a **FINAL DECISION**.  No

amendment can be made in response to the Right of Appeal Notice in an *inter partes*

reexamination. 37 CFR 1.953(c).  Further, no affidavit or other evidence can be submitted in an

*inter partes* reexamination proceeding after the right of appeal notice, except as provided in 37

CFR 1.981 or as permitted by 37 CFR 41.77(b)(1).  37 CFR 1.116(f).

Each party has a thirty-day or one-month time period, whichever is longer, to file a notice of

appeal. This time period may not be extended. 37 CFR 41.61(e).  The patent owner may appeal

to the Board of Patent Appeals and Interferences with respect to any decision adverse to the

patentability of any original or proposed amended or new claim of the patent by filing a notice of

appeal and paying the fee set forth in 37 CFR 41.20(b)(1).  The third party requester may appeal

to the Board of Patent Appeals and Interferences with respect to any decision favorable to the

patentability of any original or proposed amended or new claim of the patent by filing a notice of

appeal and paying the fee set forth in 37 CFR 41.20(b)(1).

In addition, a patent owner who has not filed a notice of appeal may file a notice of cross appeal

within fourteen days of service of a third party requester's timely filed notice of appeal and pay

the fee set forth in 37 CFR 41.20(b)(1). A third party requester who has not filed a notice of

appeal may file a notice of cross appeal within fourteen days of service of a patent owner's

timely filed notice of appeal and pay the fee set forth in 37 CFR 41.20(b)(1).

Any appeal in this proceeding must identify the claim(s) appealed, and must be signed by the

patent owner (for a patent owner appeal) or the third party requester (for a third party requester

appeal), or their duly authorized attorney or agent.

Any party that does not file a timely notice of appeal or a timely notice of cross appeal will lose

the right to appeal from any decision adverse to that party, but will not lose the right to file a

respondent brief and fee where it is appropriate for that party to do so. If no party files a timely

Application/Control Number: 95/002,095 Page 7
Art Unit: 3992

appeal, the reexamination prosecution will be terminated, and the Director will proceed to issue

and publish a certificate under 37 CFR 1.997 in accordance with this Office action.

All correspondence relating to this *inter partes* reexamination proceeding should be directed:

> By Mail:
> Mail Stop Inter Partes Reexam
> ATTN: Central Reexamination Unit Commissioner for Patents
> P.O. Box 1450
> Alexandria, VA 22313-1450
>
> By FAX:
> (571) 273-9900
> Central Reexamination Unit
>
> By hand:
> Customer Service Window
> Randolph Building
> 401 Dulany St.
> Alexandria, VA 22314
>
> Via electronic filing: https://efs.uspto.gov/efile/myportal/efs-registered

Any inquiry concerning this communication or earlier communications from the Reexamination

Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to Mary

Steelman (571) 272-3704 or to Central Reexamination Unit (571) 272-7705.

/Mary Steelman/                                    Conferees: /RSD/

Reexamination Specialist

Art Unit 3992, Central Reexamination Unit

/Alexander J Kosowski/

Supervisory Patent Examiner, Art Unit 3992

Receipt date: 06/03/2013                                                    95002095 - GAU: 3992

Doc code: IDS                                                              Approved for use through 07/31/2012. OMB 0651-0031
Doc description: Information Disclosure Statement (IDS) Filed                U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | 95002095 |
| | Filing Date | 2012-08-30 |
| | First Named Inventor | R. Reisman |
| | Art Unit | 3992 |
| | Examiner Name | M. Steelman |
| | Attorney Docket Number | 47003/0032 |

### U.S.PATENTS                                                    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.   Add

### U.S.PATENT APPLICATION PUBLICATIONS                           Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.   Add

### FOREIGN PATENT DOCUMENTS                                      Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button   Add

### NON-PATENT LITERATURE DOCUMENTS                               Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

EFS Web 2.1.17

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.S./

IA0744

| | | | |
|---|---|---|---|
| | | Application Number | 95002095 |
| **INFORMATION DISCLOSURE** | | Filing Date | 2012-08-30 |
| **STATEMENT BY APPLICANT** | | First Named Inventor | R. Reisman |
| ( **Not for submission under 37 CFR 1.99**) | | Art Unit | 3992 |
| | | Examiner Name | M. Steelman |
| | | Attorney Docket  Number | 47003/0032 |

| | | | |
|---|---|---|---|
| | 1 | Reexam. Ctrl. No. 95/002,093, Requester Comments re. Action Closing Pros. (May 3, 2013) | ☐ |

| If you wish to add additional non-patent literature document citation information please click the Add button **Add** |
|---|

| **EXAMINER SIGNATURE** | | | |
|---|---|---|---|
| Examiner Signature | /Mary Steelman/ | Date Considered | 07/24/2013 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

Receipt date: 06/03/2013

| | |
|---|---|
| Application Number | 95002095 |
| Filing Date | 2012-08-30 |
| First Named Inventor | R. Reisman |
| Art Unit | 3992 |
| Examiner Name | M. Steelman |
| Attorney Docket Number | 47003/0032 |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

GAU: 3992

---

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☒ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☐ None

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | / M.C. Phillips / | Date (YYYY-MM-DD) | 2013-06-03 |
|---|---|---|---|
| Name/Print | Matthew C. Phillips | Registration Number | 43403 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.S./

IA0746

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.S./

IA0747

| *Reexamination* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 95002095 | 6658464 |
| | **Certificate Date** | **Certificate Number** |
| | | |

| Requester Correspondence Address: | ☐ Patent Owner | ☒ Third Party |
|---|---|---|

KILPATRICK TOWNSEND & STOCKTON LLP
TWO EMBARCADERO CENTER
EIGHTH FLOOR
SAN FRANCISCO, CA 94111-3834

| **LITIGATION REVIEW** ☒ | MS (examiner initials) | 03/27/2013 (date) |
|---|---|---|
| Case Name | | Director Initials |
| Teleshuttle Tech LLC et al v Microsoft Corp OPEN3:04cv2927 | | |
| Intellectual Ventures Inc v Motorola Mobility Llc 1:11cv908 | | |
| Teleshuttle Tech LLC et al v Microsoft Corp CLOSED5:04cv2927 | | |
| | | |
| | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| **TYPE OF PROCEEDING** | **NUMBER** |
| 1. None found | |
| | |
| | |
| | |

| | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 95002095 | 6658464 |
| | **Examiner** | **Art Unit** |
| | MARY STEELMAN | 3992 |

### CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Prosecution History | 07/23/2013 | MS |

### INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| | |
|---|---|
| | |

U.S. Patent and Trademark Office

Part of Paper No. :  20130722

**IA0749**

Receipt date: 07/02/2013                                                     95002095 - GAU: 3992
Doc code: IDS                                                                        PTO/SB/08a (01/10)
Doc description: Information Disclosure Statement (IDS) Filed                    Approved for use through 07/31/2012. OMB 0651-0031
                                                                               U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | |
|---|---|
| Application Number | 95002095 |
| Filing Date | 2012-08-30 |
| First Named Inventor | Richard R. Reisman |
| Art Unit | 3992 |
| Examiner Name | Mary J STEELMAN |
| Attorney Docket Number | 47003/0032 |

### U.S.PATENTS                                    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 4714989 | A | 1987-12-22 | Billings | |
| | 2 | 5715463 | A | 1998-02-03 | Merkin | |

If you wish to add additional U.S. Patent citation information please click the Add button.   Add

### U.S.PATENT APPLICATION PUBLICATIONS                    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.   Add

### FOREIGN PATENT DOCUMENTS                               Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button   Add

### NON-PATENT LITERATURE DOCUMENTS                         Remove

EFS Web 2.1.17

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.S./

IA0750

| | | |
|---|---|---|
| | Application Number | 95002095 7830 |
| | Filing Date | 2012-08-30 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99**) | First Named Inventor | Richard R. Reisman |
| | Art Unit | 3992 |
| | Examiner Name | Mary J STEELMAN |
| | Attorney Docket Number | 47003/0032 |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button    Add

### EXAMINER SIGNATURE

| Examiner Signature | /Mary Steelman/ | Date Considered | 07/24/2013 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through a citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04.  [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3).  [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document.  [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible.  [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.S./

IA0751

Receipt date: 07/02/2013

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 95002095 7831 |
| | Filing Date | 2012-08-30 |
| | First Named Inventor | Richard R. Reisman |
| | Art Unit | 3992 |
| | Examiner Name | Mary J STEELMAN |
| | Attorney Docket Number | 47003/0032 |

**GAU: 3992**

---

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ None

### SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | / M.C. Phillips / | Date (YYYY-MM-DD) | 2013-07-02 |
|---|---|---|---|
| Name/Print | Matthew C. Phillips | Registration Number | 43403 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EFS Web 2.1.17

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.S./

IA0752

Receipt date: 07/02/2013                                                                                    95002095 - GAU: 3992

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.S./

IA0753

Receipt date: 06/25/2013                                                                95002095 - GAU: 3992

Doc code: IDS                                                                 PTO/SB/08a (01-10)
Doc description: Information Disclosure Statement (IDS) Filed          Approved for use through 07/31/2012. OMB 0651-0031
                                                                       U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | |
|---|---|
| Application Number | 95002095 |
| Filing Date | 2012-08-30 |
| First Named Inventor | Richard R. Reisman |
| Art Unit | 3992 |
| Examiner Name | Mary J STEELMAN |
| Attorney Docket Number | 47003/0032 |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

## U.S.PATENTS
Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 5241594 | A | 1993-08-31 | Kung | |
| | 2 | 5371532 | A | 1994-12-06 | Gelman et al. | |
| | 3 | 5506984 | A | 1996-04-09 | Miller | |
| | 4 | 5513126 | A | 1996-04-30 | Harkins et al. | |
| | 5 | 5675507 | A | 1997-10-07 | Bobo Ii | |
| | 6 | 5838458 | A | 1998-11-17 | Tsai | |
| | 7 | 5903454 | A | 1999-05-11 | Hoffberg Linda et al. | |
| | 8 | 5903723 | A | 1999-05-11 | Beck et al. | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.S./
IA0754

| | | | | | | |
|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>( **Not for submission under 37 CFR 1.99**) | | Application Number | 7834 | 95002095 | | |
| | | Filing Date | 2012-08-30 | | | |
| | | First Named Inventor | Richard R. Reisman | | | |
| | | Art Unit | 3992 | | | |
| | | Examiner Name | Mary J STEELMAN | | | |
| | | Attorney Docket Number | 47003/0032 | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | 9 | 6252869 | B1 | 2001-06-26 | Silverman | |
| | 10 | 6366933 | B1 | 2002-04-02 | Ball et al. | |
| | 11 | 6507410 | B1 | 2003-01-14 | Robertson Philip et al. | |
| | 12 | 6754710 | B1 | 2004-06-22 | Mcalear | |
| | 13 | 6965864 | B1 | 2005-11-15 | Thrift et al. | |
| | 14 | H1641 | H | 1997-04-01 | Sharman | |

If you wish to add additional U.S. Patent citation information please click the Add button.   **Add**

**U.S.PATENT APPLICATION PUBLICATIONS**   Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.   **Add**

**FOREIGN PATENT DOCUMENTS**   Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.S./

Receipt date: 06/25/2013

| | | |
|---|---|---|
| | Application Number | 95002095 |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Filing Date | 2012-08-30 |
| | First Named Inventor | Richard R. Reisman |
| | Art Unit | 3992 |
| | Examiner Name | Mary J STEELMAN |
| | Attorney Docket Number | 47003/0032 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button **Add**

| **NON-PATENT LITERATURE DOCUMENTS** | | Remove |
|---|---|---|

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc) date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T⁵ |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button **Add**

| **EXAMINER SIGNATURE** | | |
|---|---|---|
| Examiner Signature | /Mary Steelman/ | Date Considered 07/24/2013 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.S./

IA0756

| | |
|---|---|
| **Receipt date: 06/25/2013** | **Application Number** 7836 | 95002095 | 95002095 GAU: 3992 |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 7836 |
| Filing Date | 2012-08-30 |
| First Named Inventor | Richard R. Reisman |
| Art Unit | 3992 |
| Examiner Name | Mary J STEELMAN |
| Attorney Docket Number | 47003/0032 |

---

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ None

**SIGNATURE**

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | / M.C. Phillips / | Date (YYYY-MM-DD) | 2013-06-25 |
|---|---|---|---|
| Name/Print | Matthew C. Phillips | Registration Number | 43403 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.S./

IA0757

Receipt date: 06/25/2013                                                                    9500209S - GAU: 3992

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.   The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.   A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.   A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.   A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.   A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.   A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.   A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.   A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.   A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /M.S./

IA0758

EXHIBIT 34

| Claims | Claim Element | Disclosing Reference | Disclosure: **At issue** or **Not At issue** |
|---|---|---|---|
| **Independent claims reciting "software":** **1** **31** **61** **91** **121** **241** **256** **271** **286** **316** | A computer implemented method for distributing software from a remote computer system to a user station, the method comprising: | See, e.g., Grube Abstract, Fig. 2, col. 6:19-32, 1993 Application Abstract, p. 3, lines 21-32, p. 8 line 29 – p. 9, line 9 | **Not At issue** Nieh Report, para. 119. |
| | responsive to an identification of software already installed on the user station, presenting a directory of software available for installation on the user station and not already installed on the user station; | Grube Abstract, Fig. 2, col. 4:43-53, col. 4:57-66, col. 5:5-8, col. 6:19-32, 1993 Application at p. 6, lines 2-23, p. 8, lines 29-35 | **Not At issue** Nieh Report, para. 119. |

1

| Claims | Claim Element | Disclosing Reference | Disclosure: **At issue** or **Not At issue** |
|---|---|---|---|
| | sending to the remote computer system over a communications network a selection of software for distribution to the user station, wherein the selection of software is selected by a user at the user station responsive to the directory; and | Grube Abstract, Fig. 2, col. 5:5-14, col. 6:19-32, 1993 Application at , p. 8 line 29 – p. 9, line 9 | **Not At issue** Nieh Report, para. 119. |
| | receiving from the remote computer system over the communications network software indicated by the selection. | Grube Abstract, col. 5:5-14, col. 6:19-32, 1993 Application at p. 8, line 29 – p. 9, line 9 | **Not At issue** Nieh Report, para. 119. |
| **Independent Claims reciting "updates":** **151** **181** **211** **362** | A computer implemented method for distributing software updates from a remote computer system to a user station, the method comprising: | Grube Abstract, Fig. 2, col. 1:59-2:4, col. 6:19-32, 1993 Application Abstract, p. 3, lines 21-32, p. 8 line 29 – p. 9, line 9 | **At issue** only as to whether "updates" are disclosed. Nieh Report, para. 119. |

2

**IA0760**

| Claims | Claim Element | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|---|
| | presenting, at the user station, as a function of an identification of software already installed on the user station, a directory of software updates available for installation on the user station; | Grube Abstract, Fig. 2, col. 1:59-2:4, col. 4:43-53, col. 4:57-66, col. 5:5-8, col. 6:19-32, 1993 Application at p. 6, lines 2-23, p. 8, lines 29-35 | **At issue** only as to whether "updates" are disclosed. Nieh Report, para. 119. |
| | sending to the remote computer system over a communications network a selection of software updates for distribution to the user station, wherein the selection of software updates is selected at the user station as a function of the directory; and | Grube Abstract, Fig. 2, col. 1:59-2:4, col. 5:5-14, col. 6:19-32, 1993 Application at , p. 8 line 29 – p. 9, line 9 | **At issue** only as to whether "updates" are disclosed. Nieh Report, para. 122. |
| | receiving from the remote computer system over the communications network software updates indicated by the selection. | Grube Abstract, col. 1:59-2:4, col. 5:5-14, col. 6:19-32, 1993 Application at p. 8, line 29 – p. 9, line 9 | **At issue** only as to whether "updates" are disclosed. Nieh Report, para. 123. |

3

| Claims | Claim Element | Disclosing Reference | Disclosure: **At issue** or *Not At issue* |
|---|---|---|---|
| **Dependent claims reciting "updates," rather than "software":** <br><br>**152-155** <br><br>**159-165** <br><br>**181-185** <br><br>**189 – 195** <br><br>**211-215** <br><br>**219-225** <br><br>**362-366** <br><br>**370-376** | | | **At issue** as to whether "updates" are disclosed. <br><br>Nieh Report, para. 119. |

4

| Claims | Claim Element | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|---|
| **Dependent claims wherein user is not required to identify software that is already installed:**<br><br>**2**<br><br>**32**<br><br>**62**<br><br>**92**<br><br>**122**<br><br>**152**<br><br>**182**<br><br>**212**<br><br>**242**<br><br>**257**<br><br>**272**<br><br>**287**<br><br>**317**<br><br>**363** | e.g., claim 2:<br><br>wherein the identification of software already installed on the user station is determined without requiring the user to identify the software | Grube Abstract, Fig. 2, col. 4:43-53, col. 6:19-32, 1993 Application at p. 6, lines 2-23, p. 8, lines 29-35 | **Not At issue.**<br><br>Nieh Report, para. 119. |

5

| Claims | Claim Element | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|---|
| **Dependent claims where directory is provided by the remote computer system:**<br><br>**3**<br><br>**33**<br><br>**63**<br><br>**93**<br><br>**123**<br><br>**153**<br><br>**183**<br><br>**213**<br><br>**243**<br><br>**258**<br><br>**273**<br><br>**288**<br><br>**318**<br><br>**364** | e.g., claim 3:<br><br>wherein the directory is provided by the remote computer system | Grube Abstract, Fig. 2, col. 4:57-66, col. 6:19-32, 1993 Application at p. 6, lines 2-23, p. 8, lines 29-35 | **Not At issue.**<br><br>Nieh Report, para. 119. |

6

| Claims | Claim Element | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|---|
| **Dependent claims requiring user confirmation:**<br><br>**4**<br><br>**34**<br><br>**64**<br><br>**94**<br><br>**124**<br><br>**154**<br><br>**184**<br><br>**214**<br><br>**244**<br><br>**259**<br><br>**274**<br><br>**289**<br><br>**319**<br><br>**365** | e.g., claim 4:<br><br>wherein the software indicated by the selection is received from the remote computer system only after the user confirms that the software should be received | Grube Abstract, Fig. 2, col. 5:5-14, col. 6:19-32, 1993 Application at p. 8, line 29 – p. 9, line 9. | **At issue.**<br><br>Nieh Report, para. 125. |

7

| Claims | Claim Element | Disclosing Reference | Disclosure: <br> **At issue** or <br> **Not At issue** |
|---|---|---|---|
| **Dependent claims requiring method be initiated by communications between user station and remote computer:** <br><br> **5** <br><br> **35** <br><br> **65** <br><br> **95** <br><br> **125** <br><br> **155** <br><br> **185** <br><br> **215** <br><br> **245** <br><br> **260** <br><br> **275** <br><br> **290** <br><br> **320** <br><br> **366** | e.g., claim 5: <br><br> wherein the method is initiated in response to a communication between the user station and the remote computer system | Grube Abstract, Fig. 2, col. 4:14-18, col. 6:19-25, 1993 Application at Abstract, p. 8, lines 14-19, p. 8, line 29 – p. 9, line 9. | **Not At issue.** <br><br> Nieh Report, para. 119. |

| Claims | Claim Element | Disclosing Reference | Disclosure:<br><br>**At issue** or<br><br>**Not At issue** |
|---|---|---|---|
| **Dependent claims requiring that software is automatically installed:**<br><br>**9**<br><br>**39**<br><br>**69**<br><br>**99**<br><br>**129**<br><br>**159**<br><br>**189**<br><br>**219**<br><br>**249**<br><br>**264**<br><br>**279**<br><br>**294**<br><br>**324**<br><br>**370** | e.g., claim 9:<br><br>wherein, once the software indicated by the selection is received from the remote system, the software is automatically installed on the user station | Grube at col. 6:19-32, 1993 Application at p. 8, line 29 – p. 9, line 4. | **At issue.**<br><br>Nieh Report, para. 126-27. |

9

| Claims | Claim Element | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|---|
| **Dependent claims limiting directory to updates to at least a portion of software already installed:**<br><br>**10**<br><br>**40**<br><br>**70**<br><br>**100**<br><br>**130**<br><br>**160**<br><br>**190**<br><br>**220**<br><br>**250**<br><br>**265**<br><br>**280**<br><br>**295**<br><br>**325** | e.g., claim 10:<br><br>wherein the directory describes updates to at least a portion of the software already installed on the user station | Grube at col. 1:59-2:4, 1993 Application at p. 8, line 29 – p. 9, line 4. | **At issue, as to whether directory includes updates.**<br><br>Nieh Report, para. 128. |

10

| Claims | Claim Element | Disclosing Reference | Disclosure: **At issue** or **Not At issue** |
|--------|---------------|----------------------|-----------------------------------------------|
| **Dependent claims requiring that the method is facilitated by use of an HTML viewer:** **11** **41** **71** **101** **131** **161** **191** **221** **251** **266** **281** **296** **326** **372** | e.g., claim 11: wherein the method is facilitated using an HTML viewer at the station | Grube Abstract, col. 3:13-34, 1993 Application Abstract, HTML at 1, 4-40. | **At issue.** Nieh Report, para. 129. |

| Claims | Claim Element | Disclosing Reference | Disclosure: **At issue** or **Not At issue** |
|---|---|---|---|
| **Dependent claims requiring that the communications network includes the Internet:**<br><br>**12**<br><br>**42**<br><br>**72**<br><br>**102**<br><br>**132**<br><br>**162**<br><br>**192**<br><br>**222**<br><br>**252**<br><br>**267**<br><br>**282**<br><br>**297**<br><br>**327**<br><br>**373** | e.g., claim 12:<br><br>wherein the communications network includes the Internet | Grube Abstract, col. 1:33-41, 3:13-24, 1993 Application Abstract, p. 1, lines 30-35, Reynolds 1993 at 86-93. | **At issue.**<br><br>Nieh Report, para. 130-32. |

12

| Claims | Claim Element | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|---|
| **Dependent claims listing possible user stations:**<br><br>**13**<br><br>**43**<br><br>**73**<br><br>**103**<br><br>**133**<br><br>**163**<br><br>**193**<br><br>**223**<br><br>**253**<br><br>**268**<br><br>**283**<br><br>**298**<br><br>**328**<br><br>**374** | e.g., claim 13:<br><br>wherein the user station comprises at least one of a computer, cable television controller, video game player . . . . | Grube Abstract, col. 3:13-16, 1993 Application Abstract. | **Not At issue.**<br><br>Nieh Report, para. 119. |

13

| Claims | Claim Element | Disclosing Reference | Disclosure:<br><span style="color:red">At issue</span> or<br><span style="color:green">Not At issue</span> |
|---|---|---|---|
| **Dependent claims limiting user interface at user station:**<br><br>**14**<br><br>**44**<br><br>**74**<br><br>**104**<br><br>**134**<br><br>**164**<br><br>**194**<br><br>**224**<br><br>**254**<br><br>**269**<br><br>**284**<br><br>**299**<br><br>**329**<br><br>**375** | e.g., claim 14:<br><br>wherein the method is facilitated using a user interface provided at the user station by an entity associated with the software indicated by the director | Grube at col. 2:53-58, col. 6:19-32, 1993 Application at p. 8, line 29 – p. 9, line 4. | **Not At issue.**<br><br>Nieh Report, para. 119. |

14

**IA0772**

| Claims | Claim Element | Disclosing Reference | Disclosure: <br> **At issue** or <br> **Not At issue** |
|---|---|---|---|
| **Dependent claims requiring that method is initiated in response to communication that is initiated by user action:** <br><br> **15** <br><br> **45** <br><br> **75** <br><br> **105** <br><br> **135** <br><br> **165** <br><br> **195** <br><br> **225** <br><br> **255** <br><br> **270** <br><br> **285** <br><br> **300** <br><br> **330** <br><br> **376** | e.g., claim 15: <br><br> wherein: the method is initiated in response to a communication between the user station and the remote computer system, and <br><br> the communication is initiated by a user action. | Grube at Fig. 2, col. 4:15-18, 1993 Application at p. 8, line 29 – p. 9, line 4. | **Not At issue.** <br><br> Nieh Report, para. 119. |

**IA0773**

16

IA0774

EXHIBIT 35

| Claims | Disclosing Reference | Disclosure:<br>**At issue** or<br>**Not At issue** |
|---|---|---|
| 1. A software product for use at a user station, the user station including a processor and a storage device, the software product comprising computer executable instructions that, when executed by the processor: | See, e.g.,<br><br>Ogaki at Fig. 1, Fig. 3, Fig. 4B, col. 9:23-65 | **Not At issue**<br><br>Nieh Report at ¶ 255 |
| [1a] enable a user at the user station to select content from each of a plurality of independent publishers; | Ogaki at col. 1:46-56, col. 8:3-7, 8:20-27, col. 8:28-35, col. 10:17-23, col. 11:39-47 | **Not At issue**<br>Nieh Report at ¶ 255 |
| [1b] effect transport of the selected content from each of the plurality of publishers to the user station over a communications network and, | Ogaki at Fig. 4A, col. 6:8-23, col. 11:39-47 | **At issue**<br>Nieh Report at ¶ 255 |

**IA0775**

| Claims | Disclosing Reference | Disclosure: **At issue** or **Not At issue** |
|---|---|---|
| [1c] without user intervention, effect storage of the transported content to the storage device such that the content is retained on the storage device upon shutting down of the user station and/or deactivation of the software product; | Ogaki at col. 9:23-29, col. 9:60-65, col. 11:39-47 | **At issue** Nieh Report at ¶ 255 |
| [1d] and effect presentation of the stored content to the user at the user station with a user interface that is customized to the respective publishers. | Ogaki at 4:36-45, col. 6:59-64, col. 8:45-53, col. 9:44-52 | **At issue** Nieh Report at ¶ 255 |

2

| Claims | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|
| 2. The software product as set forth in claim 1, further comprising computer executable instructions that, when executed by the processor: effect a network connection between the user station and the communications network, via a network provider, | Ogaki at Fig. 4A, col. 6:8-23 | At issue Nieh Report at ¶ 262 |
| [2a] wherein the plurality of independent publishers available for selection are not determined by the network provider. | Ogaki at col. 1:46-56, 10:17-23, col. 11:39-47 | At issue Nieh Report at ¶ 262 |
| 3. The software product as set forth in claim 2, wherein the communications network is the Internet. | Ogaki at Fig. 4A, col. 6:8-23 Reynolds 1993 at 86, 90 | At issue Nieh Report at ¶ 263 |

3

| Claims | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|
| 4. The software product as set forth in claim 2, wherein the user interface is provided by the respective publishers. | Ogaki at col. 4:36-45, col. 6:59-64, col. 8:39-44, 8:45-53, col. 9:23-29, 9:44-52 | At issue Nieh Report at ¶ 258 |
| 5. The software product as set forth in claim 1, wherein the user interface is provided by the respective publishers. | Ogaki at col. 4:36-45, col. 6:59-64, col. 8:39-44, 8:45-53, col. 9:23-29, 9:44-52 | At issue Nieh Report at ¶ 258 |
| 6. The software product as set forth in claim 1, further comprising computer executable instructions that, when executed by the processor: effect a network connection between the user station and the communications network, via a network provider, | Ogaki at Fig. 4A, col. 6:8-23, col. 8:39-44, col. 9:23-29 | At issue Nieh Report at ¶ 262 |

4

| Claims | Disclosing Reference | Disclosure:<br><br>**At issue** or<br><br>Not At issue |
|---|---|---|
| wherein the user interface is provided by the respective publisher independently of the network provider. | Ogaki at col. 6:59-64, col. 8:45-53 | **At issue**<br>Nieh Report at ¶ 262 |
| 7. The software product as set forth in claim 1, further comprising computer executable instructions that, when executed by the processor: effect a network connection between the user station and the communications network, via a network provider, | Ogaki at Fig. 4A, col. 6:8-23, col. 8:39-44, col. 9:23-29 | **At issue**<br>Nieh Report at ¶ 262 |
| wherein the user interface is provided without cooperation of the network provider. | Ogaki at col. 6:59-64, col. 8:45-53 | **At issue**<br>Nieh Report at ¶ 262 |

5

**IA0779**

| Claims | Disclosing Reference | Disclosure:<br><br>**At issue** or<br><br>**Not At issue** |
|---|---|---|
| 8. The software product as set forth in claim 1, wherein the transport of the selected content to the user station is effected without user intervention. | Ogaki at col. 8:39-44, col. 9:23-29 | **Not At issue** |
| 16. The software product as set forth in claim 1, wherein the transport of the selected content to the user station is effected using a non-proprietary data transfer protocol. | Ogaki at Fig. 4A, col. 6:8-23<br>Reynolds 1993 at 86, 89-91 | **At issue**<br>Nieh Report at ¶ 263 |
| 17. The software product as set forth in claim 1, wherein the communications network is the Internet. | Ogaki at Fig. 4A, col. 6:8-23<br>Reynolds 1993 at 86, 90 | **At issue**<br>Nieh Report at ¶ 263 |

**IA0780**

| Claims | Disclosing Reference | Disclosure:<br><br>**At issue** or<br><br>**Not At issue** |
|---|---|---|
| 19. The software product as set forth in claim 1, further comprising computer executable instructions that, when executed by the processor: enable the user to effect a network connection between the user station and the communications network, via any selected one of a plurality of different available network providers. | Ogaki at Fig. 4A, col. 6:8-23 | **At issue**<br>Nieh Report at ¶ 262 |

7

| Claims | Disclosing Reference | Disclosure:<br><span style="color:red">At issue</span> or<br><span style="color:green">Not At issue</span> |
|---|---|---|
| 20. A software product for use at a user station, the user station including a processor and a storage device, the software product comprising computer executable instructions that, when executed by the processor: | See, e.g.,<br><br>Ogaki at Fig. 1, Fig. 3, Fig. 4B, col. 9:23-65 | <span style="color:green">Not At issue</span><br>Nieh Report at ¶ 255 |
| [20a] enable a user at the user station to select content from each of a plurality of independent services; | Ogaki at col. 1:46-56, col. 8:3-7, 8:20-27, col. 8:28-35, col. 10:17-23, col. 11:39-47 | <span style="color:green">Not At issue</span><br>Nieh Report at ¶ 255 |
| [20b] effect transport of the selected content from each of the plurality of services to the user station over a communications network and, | Ogaki at Fig. 4A, col. 6:8-23, col. 11:39-47 | <span style="color:red">At issue</span><br>Nieh Report at ¶ 255 |

8

| Claims | Disclosing Reference | Disclosure: <br> **At issue** or <br> **Not At issue** |
|---|---|---|
| [20c] without user intervention, effect storage of the transported content to the storage device such that the content is retained on the storage device upon shutting down of the user station and/or deactivation of the software product; and | Ogaki at col. 9:23-29, col. 9:60-65, col. 11:39-47 | **At issue** <br> Nieh Report at ¶ 255 |
| [20d] effect presentation of the stored content to the user at the user station with a user interface that is customized to the respective services. | Ogaki at 4:36-45, col. 6:59-64, col. 8:45-53, col. 9:44-52 | **At issue** <br> Nieh Report at ¶ 255 |

9

| Claims | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|
| 21. The software product as set forth in claim 20, further comprising computer executable instructions that, when executed by the processor: effect a network connection between the user station and the communications network, via a network provider, wherein the plurality of independent services available for selection are not determined by the network provider. | See the material accompanying claim 2, which is herein incorporated by reference. | At issue<br>Nieh Report at ¶ 262 |
| 22. The software product as set forth in claim 21, wherein the communications network is the Internet. | See the material accompanying claim 3, which is herein incorporated by reference. | At issue<br>Nieh Report at ¶ 263 |

10

| Claims | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|
| 23. The software product as set forth in claim 21, wherein the user interface is provided by the respective services. | See the material accompanying claim 4, which is herein incorporated by reference. | **At issue** Nieh Report at ¶ 258 |
| 24. The software product as set forth in claim 20, wherein the user interface is provided by the respective services. | See the material accompanying claim 5, which is herein incorporated by reference. | **At issue** Nieh Report at ¶ 258 |

11

| Claims | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|
| 25. The software product as set forth in claim 20, further comprising computer executable instructions that, when executed by the processor: effect a network connection between the user station and the communications network, via a network provider, wherein the user interface is provided by the respective service independently of the network provider. | See the material accompanying claim 6, which is herein incorporated by reference. | **At issue** Nieh Report at ¶ 262 |

IA0786

| Claims | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|
| 26. The software product as set forth in claim 20, further comprising computer executable instructions that, when executed by the processor: effect a network connection between the user station and the communications network, via a network provider, wherein the user interface is provided without cooperation of the network provider. | See the material accompanying claim 7, which is herein incorporated by reference. | At issue Nieh Report at ¶ 262 |
| 27. The software product as set forth in claim 20, wherein the transport of the selected content to the user station is effected without user intervention. | See the material accompanying claim 8, which is herein incorporated by reference. | At issue |

13

| Claims | Disclosing Reference | Disclosure:<br><br>**At issue** or<br><br>**Not At issue** |
|---|---|---|
| 35. The software product as set forth in claim 20, wherein the transport of the selected content to the user station is effected using a non-proprietary data transfer protocol. | See the material accompanying claim 16, which is herein incorporated by reference. | **At issue**<br>Nieh Report at ¶ 263 |
| 36. The software product as set forth in claim wherein the communications network is the Internet. | See the material accompanying claim 17, which is herein incorporated by reference. | **At issue**<br>Nieh Report at ¶ 263 |

14

| Claims | Disclosing Reference | Disclosure: At issue or Not At issue |
|---|---|---|
| 38. The software product as set forth in claim 20, further comprising computer executable instructions that, when executed by the processor: enable the user to effect a network connection between the user station and the communications network, via any selected one of a plurality of different available network providers. | See the material accompanying claim 19, which is herein incorporated by reference. | **At issue** Nieh Report at ¶ 262 |

15

**IA0789**

# EXHIBIT 36

# In The Matter Of:

## *INTELLECTUAL VENTURES I, LLC, et al.*
## *v.*
## *MOTOROLA MOBILITY, LLC*

_____

## *BRETT GALLOWAY - Vol. 1*
### *May 8, 2013*

_____

**MERRILL CORPORATION**

**LegaLink, Inc.**

135 Main Street
4th Floor
San Francisco, CA 94105
Phone: 415.357.4300
Fax: 415.357.4301

IA0790

**BRETT GALLOWAY - 5/8/2013**

98

| | | |
|---|---|---|
| 01:48:57 | 1 | innovation was relatively limited.  And in practice |
| 01:49:01 | 2 | even beyond that, you know, if there was innovation, |
| 01:49:04 | 3 | it was almost always by our SE's, our system |
| 01:49:09 | 4 | engineers, who with sort of complicated installations |
| 01:49:12 | 5 | would tend to get involved, you know, if they were |
| 01:49:15 | 6 | bigger customers -- who obviously had more |
| 01:49:18 | 7 | knowledge of the product and more ability to know, |
| 01:49:21 | 8 | you know, what the range of configuration items were, |
| 01:46:23 | 9 | you know, that they could, that they could draw from |
| 01:49:26 | 10 | to solve a particular customer problem. |
| 01:49:28 | 11 | So, you know, so the final answer to your |
| 01:49:31 | 12 | question is I -- you know, a PacketShaper of an |
| 01:49:34 | 13 | earlier era might or might not have, you know -- |
| 01:49:38 | 14 | probably either would have just worked or not worked |
| 01:49:42 | 15 | because it had a sufficient number of features to |
| 01:49:45 | 16 | satisfy their use case or not. |
| 01:49:47 | 17 | Q.   MR. ZOLOTOREV:  So it's possible that a |
| 01:49:48 | 18 | pre-'98 PacketShaper would not have worked at all in |
| 01:49:52 | 19 | a wireless -- |
| 01:49:55 | 20 | A.   Well, in their particular -- in their |
| 01:49:57 | 21 | particular application which, again, was a bunch of |
| 01:50:00 | 22 | stuff, some of which, you know, was specifically |
| 01:50:03 | 23 | about the wireless -- the fact that it's wireless, |
| 01:50:07 | 24 | and I'm sure there were other aspects of the -- of their |
| 01:50:10 | 25 | product requirements that were just aspects of their |

99

| | | |
|---|---|---|
| 01:50:12 | 1 | own business architecture, you know, how they define |
| 01:50:17 | 2 | services, how they define pricing, you know, how they |
| 01:50:20 | 3 | architected the wire line network, you know, above |
| 01:50:25 | 4 | the wireless network. |
| 01:50:26 | 5 | Q.   Okay.  I'm sorry.  I'm going to repeat my |
| 01:50:28 | 6 | question just because I think we spoke over each |
| 01:50:32 | 7 | other.  It's entirely possible that the pre-mid '98 |
| 01:50:37 | 8 | PacketShaper product would not have worked with, |
| 01:50:42 | 9 | let's say, MCI's wireless network for the purpose of |
| 01:50:47 | 10 | allocating wireless bandwidth, correct? |
| 01:50:50 | 11 | MS. DECAIRE:  Object to the form. |
| 01:50:51 | 12 | THE WITNESS:  It is correct that the pre-'98 |
| 01:50:55 | 13 | product -- it's entirely possible the pre-'98 product |
| 01:51:00 | 14 | would just not have met their requirements.  You |
| 01:46:24 | 15 | know, the thing I would add on top of that is that |
| 01:51:05 | 16 | those requirements would be, you know, a composite of |
| 01:51:08 | 17 | features they needed around, you know, the wireless |
| 01:51:10 | 18 | part of their network and features they needed |
| 01:51:13 | 19 | around, you know, other aspects of their -- both of |
| 01:51:14 | 20 | their network, wire network, as well as just around |
| 01:51:18 | 21 | features they needed to build a service. |
| 01:51:21 | 22 | And MCI's problem, right, was not wireless |
| 01:51:25 | 23 | quality of service.  MCI's problem was, from what I |
| 01:51:29 | 24 | recall, defining service envelopes that they could |
| 01:51:31 | 25 | charge for. |

100

| | | |
|---|---|---|
| 01:51:36 | 1 | And -- and so, you know, you know, the idea |
| 01:51:41 | 2 | there being if you have -- you know, if you want to |
| 01:51:43 | 3 | be able to sell different levels of service, you have |
| 01:51:46 | 4 | to have some ability to enforce those different |
| 01:51:48 | 5 | levels of service because otherwise there is no basis |
| 01:51:50 | 6 | to charge one person more than the next person.  And |
| 01:51:54 | 7 | over time people become aware -- if there is no |
| 01:51:57 | 8 | enforcement they become aware that there is no |
| 01:51:59 | 9 | enforcement and they cheat.  Or they don't even |
| 01:52:04 | 10 | cheat.  They actually just buy the lowest level of |
| 01:52:07 | 11 | service and they get whatever -- they get the service |
| 01:52:09 | 12 | that they wanted. |
| 01:52:11 | 13 | So MCI's core problem was a business problem, |
| 01:52:15 | 14 | which is justifying higher price points. |
| 01:52:17 | 15 | Q.   Do you know whether MCI considered a pre-mid |
| 01:52:25 | 16 | '98 PacketShaper product as a solution to allocate |
| 01:52:30 | 17 | shared wireless bandwidth on its network? |
| 01:52:34 | 18 | A.   I don't know.  You know, what I can say is, |
| 01:52:36 | 19 | you know, that use case -- the basic use case I |
| 01:52:39 | 20 | described was a pretty simple use case, all right, |
| 01:52:45 | 21 | where you have a bunch of subscribers and you're |
| 01:52:48 | 22 | basically just trying to partition bandwidth between |
| 01:52:53 | 23 | them. |
| 01:52:54 | 24 | All right.  So that use case would have been, |
| 01:52:56 | 25 | you know, constructively enabled by the PacketShaper |

101

| | | |
|---|---|---|
| 01:53:00 | 1 | once we introduced the partition feature. |
| 01:53:03 | 2 | Q.   When was that? |
| 01:53:04 | 3 | A.   I believe that was introduced in -- well, I |
| 01:53:14 | 4 | know it was introduced before we went public in '99. |
| 01:53:17 | 5 | So it would have been '98 or '97.  You know, and |
| 01:53:22 | 6 | that -- that feature was used a lot in sort of |
| 01:53:26 | 7 | service layer like use cases where you're basically, |
| 01:53:30 | 8 | you know, where you're basically trying to sell |
| 01:53:33 | 9 | bandwidth to a bunch of subscribers. |
| 01:53:36 | 10 | You know, the typical configuration for that |
| 01:53:39 | 11 | was we would -- you know, you would allocate some sub |
| 01:53:41 | 12 | net to that subscriber and then we would classify on |
| 01:53:43 | 13 | behalf of the sub net and then we would map all of |
| 01:53:47 | 14 | the traffic in that sub net to a particular partition |
| 01:53:52 | 15 | and then we would manage bandwidth to that partition |
| 01:53:55 | 16 | envelope.  And then within that partition we could |
| 01:53:58 | 17 | then also -- we could also provide secondary policy |
| 01:54:00 | 18 | control. |
| 01:54:01 | 19 | Q.   Can you state with any more specificity as to |
| 01:54:04 | 20 | when the partition feature was introduced? |
| 01:54:07 | 21 | A.   No, I just -- unfortunately -- I wish I |
| 01:54:13 | 22 | could, actually. |
| 01:54:15 | 23 | Q.   Can you -- so -- |
| 01:54:19 | 24 | A.   Thinking about it, you know, we introduced |
| 01:54:24 | 25 | the PacketShaper commercially in Q1 of '97.  And, you |

26  (Pages 98 to 101)

**Merrill Corporation - San Francisco**

**BRETT GALLOWAY - 5/8/2013**

102

| | | |
|---|---|---|
| 01:54:31 | 1 | know, we pretty much had a complete feature set, you |
| 01:54:36 | 2 | know, you know, sort of -- that was sort of usable by |
| 01:54:39 | 3 | a lot of customers by the end of '97. And then it |
| 01:54:42 | 4 | was sort of the end of '97 where we started |
| 01:54:44 | 5 | aggressively investing in sales and then, you know, |
| 01:54:47 | 6 | ramped up the size of the company and then over |
| 01:54:50 | 7 | the -- over '98 grew the company and then filed to |
| 01:54:55 | 8 | go -- started preparing to go public at the end of |
| 01:54:57 | 9 | 1998. So it's probable that we had that feature in |
| 01:55:01 | 10 | '97, by the end of '97. |
| 01:55:03 | 11 | Q. Okay. With what degree of certainty can you |
| 01:55:11 | 12 | state, sitting here today, that the partition feature |
| 01:55:14 | 13 | was introduced by the end of '97? |
| 01:55:16 | 14 | A. It would be in -- I want to do this |
| 01:55:26 | 15 | accurately. Probably 80 percent. |
| 01:55:38 | 16 | Q. And are you aware of any documents that would |
| 01:55:42 | 17 | corroborate your statement that with 80 percent |
| 01:55:46 | 18 | certainty the partition feature was introduced by the |
| 01:55:49 | 19 | end of '97? |
| 01:55:50 | 20 | A. I don't have any documents. I mean, the |
| 01:55:54 | 21 | simplest way to ascertain that would just be copies |
| 01:55:57 | 22 | of user, you know, you know, contemporaneous user |
| 01:56:05 | 23 | documentation. We build user manuals. We updated |
| 01:56:09 | 24 | them every release. Certainly by -- certainly we had |
| 01:56:12 | 25 | user manuals by the end of '97. So, you know, if one |

103

| | | |
|---|---|---|
| 01:56:19 | 1 | could find those user manuals, that would be the |
| 01:56:21 | 2 | simplest way to -- to determine that. I just |
| 01:56:25 | 3 | didn't -- I didn't keep any of that stuff. |
| 01:56:27 | 4 | Q. So it's fair to say you didn't -- in coming |
| 01:56:31 | 5 | up with your answer, you didn't base that on any |
| 01:56:34 | 6 | documentary evidence, correct? |
| 01:56:35 | 7 | A. Correct. I base that on what I remember of |
| 01:56:38 | 8 | our release cycles. I mean, I wish I could say |
| 01:56:44 | 9 | certainly, but I'm trying not to overstate the things |
| 01:56:47 | 10 | I remember. |
| 01:56:48 | 11 | Q. You used the term constructively enabled, and |
| 01:56:53 | 12 | is it -- is it fair to say that prior to the release |
| 01:56:57 | 13 | of the partition feature the use case that you |
| 01:57:05 | 14 | described where the PacketShaper product would be |
| 01:57:09 | 15 | used to allocate shared bandwidth in a wireless |
| 01:57:12 | 16 | network was not constructively enabled? |
| 01:57:14 | 17 | MS. DECAIRE: Object to the form. |
| 01:57:16 | 18 | THE WITNESS: Sort of. So the use case that |
| 01:57:22 | 19 | I'm describing is a particular use case where you |
| 01:57:26 | 20 | have a PacketShaper, a router of some sort, you know, |
| 01:57:31 | 21 | and the router, again, as we've said earlier, could |
| 01:57:33 | 22 | have, you know, wireless outboard links or wired |
| 01:57:36 | 23 | outboard links; but the point is that behind that |
| 01:57:39 | 24 | router are a bunch of subscribers, and the |
| 01:57:42 | 25 | subscribers are all being provided service. And that |

104

| | | |
|---|---|---|
| 01:57:48 | 1 | service is basically defined in terms of some sort of |
| 01:57:51 | 2 | bandwidth spec. Again a very, very common use case. |
| 01:57:55 | 3 | You can, you know, you buy DSL today. It's sold the |
| 01:57:58 | 4 | same way. |
| 01:57:58 | 5 | And that use case is the one that was |
| 01:58:04 | 6 | constructively enabled by the partition feature where |
| 01:58:07 | 7 | we could basically take a set of traffic, and say for |
| 01:58:10 | 8 | this class of traffic, you know, all of the -- all of |
| 01:58:16 | 9 | the flows together would share the bandwidth -- would |
| 01:58:21 | 10 | share, you know, some aggregate share of bandwidth, |
| 01:58:24 | 11 | you know, inferior to the overall length that's |
| 01:58:34 | 12 | sharing bandwidth. |
| 01:58:35 | 13 | You know, that isn't to say that, you know, |
| 01:58:39 | 14 | the pre-partitions, you know, that we would lack the |
| 01:58:42 | 15 | ability to provide quality of service on a wireless |
| 01:58:44 | 16 | network, but we couldn't provide that capability of |
| 01:58:48 | 17 | service definition based on bandwidth guarantees. |
| 01:58:54 | 18 | Q. MR. ZOLOTOREV: In order to -- in this |
| 01:59:02 | 19 | hypothetical case of using the PacketShaper product |
| 01:59:06 | 20 | to allocate shared wireless bandwidth on a wireless |
| 01:59:11 | 21 | network, would the PacketShaper product be in some |
| 01:59:23 | 22 | manner controlling the wireless base station? |
| 01:59:27 | 23 | MS. DECAIRE: Object to the form. |
| 01:59:30 | 24 | THE WITNESS: Commonly not. I mean, where -- |
| 01:46:23 | 25 | you know, we -- given that the PacketShaper would sit |

105

| | | |
|---|---|---|
| 01:59:43 | 1 | behind the router or base station, and for these |
| 01:59:48 | 2 | purposes they're -- you can sort of -- you can treat |
| 01:59:51 | 3 | them as in combination. You know, it was not |
| 01:59:53 | 4 | uncommon that we would get requests for features |
| 01:59:57 | 5 | where we would, you know, have features where we talk |
| 02:00:00 | 6 | to the router and do some shared -- provide some |
| 02:00:04 | 7 | shared functionality. |
| 02:00:06 | 8 | You know, we tended to strongly resist those |
| 02:00:08 | 9 | because they were very, very situation dependent and |
| 02:00:11 | 10 | therefore, you know, of limited commercial |
| 02:00:14 | 11 | applicability. And so, you know, our strong bias |
| 02:00:17 | 12 | from a product definition standpoint was try to find |
| 02:00:20 | 13 | mechanisms that would work where we didn't have to do |
| 02:00:24 | 14 | that. |
| 02:00:25 | 15 | You know, to give you an example of that, you |
| 02:00:29 | 16 | know, that's relevant to this particular use case of |
| 02:00:32 | 17 | defining service levels, you know, the common |
| 02:00:40 | 18 | mechanism was used here was you did IP address or sub |
| 02:00:40 | 19 | net classification. So sub net X is user X, sub net |
| 02:00:45 | 20 | Y is user Y, sub net Z is user Z. You hard code that |
| 02:00:47 | 21 | in the PacketShaper and it works. |
| 02:00:50 | 22 | From an -- from an operational perspective |
| 02:00:52 | 23 | that's cumbersome because, you know, sub nets can get |
| 02:00:56 | 24 | remapped. What happens if the sub nets are allocated |
| 02:01:00 | 25 | dynamically? Then you have to dynamically program |

27 (Pages 102 to 105)

**BRETT GALLOWAY - 5/8/2013**

174

| | | |
|---|---|---|
| 04:10:36 | 1 | A. About two and a half years. |
| 04:10:45 | 2 | Q. Okay. So you left sometime around 1987, '88? |
| 04:10:49 | 3 | A. Early '88. |
| 04:10:51 | 4 | Q. Early '88. What did you do after Watkins |
| 04:10:57 | 5 | Johnson? |
| 04:10:58 | 6 | A. So I was recruited to go work at Metricom, |
| 04:11:02 | 7 | which was a start-up. It was building solid state |
| 04:11:05 | 8 | electric meters. I was recruited by a former |
| 04:11:08 | 9 | colleague at Watkins Johnson who had gone to work |
| 04:11:13 | 10 | there before I did. |
| 04:11:13 | 11 | Q. Who was that? |
| 04:11:14 | 12 | A. Bob Friday. And so then I subsequently |
| 04:11:20 | 13 | joined Metricom. It's the same Metricom where we |
| 04:11:24 | 14 | much later ended up building Ricochet that we talked |
| 04:11:28 | 15 | a great length about. |
| 04:11:29 | 16 | Q. Okay. In early 1988, what were your |
| 04:11:32 | 17 | responsibilities when you first went to Metricom? |
| 04:11:35 | 18 | A. I was a software engineer. |
| 04:11:37 | 19 | Q. Okay. At a high level, can you describe |
| 04:11:40 | 20 | your -- your progression or the evolution of your job |
| 04:11:43 | 21 | at Metricom? |
| 04:11:45 | 22 | A. Yes, I was a software engineer and then later |
| 04:11:48 | 23 | I was promoted to a management position. I had a few |
| 04:11:51 | 24 | software engineers working for me. After that, I was |
| 04:11:54 | 25 | promoted to director of software engineering, and |

175

| | | |
|---|---|---|
| 04:11:59 | 1 | after that was promoted to director of engineering. |
| 04:12:02 | 2 | Q. As a software engineer when you first started |
| 04:12:08 | 3 | at Metricom, you were working on solid state electric |
| 04:12:12 | 4 | meters. Did I understand that? |
| 04:12:14 | 5 | A. Well, Metricom's business was solid state |
| 04:12:18 | 6 | electric meters. We had -- they had before I got |
| 04:12:20 | 7 | there designed a mesh packet radio network for |
| 04:12:24 | 8 | backhaul and meter reads from these electric meters |
| 04:12:27 | 9 | back to headquarters. You know, we ended up |
| 04:12:32 | 10 | generalizing the use of that network beyond just |
| 04:12:35 | 11 | meter reading to other -- other industrial |
| 04:12:38 | 12 | applications and actually -- and interfacing the |
| 04:12:40 | 13 | utilities to other devices in the distribution -- in |
| 04:12:43 | 14 | the distribution system, electricity distribution |
| 04:12:46 | 15 | system. |
| 04:12:50 | 16 | Q. Okay. |
| 04:12:51 | 17 | A. You know, subsequent to that, we ended up |
| 04:12:55 | 18 | conceiving and building Ricochet. |
| 04:12:57 | 19 | Q. Okay. And then after Metricom -- I believe |
| 04:13:01 | 20 | you left Metricom in 1995; is that correct? |
| 04:13:04 | 21 | A. '96. |
| 04:13:05 | 22 | Q. '96, okay. And Packeteer was your next |
| 04:13:09 | 23 | endeavor, correct? |
| 04:13:10 | 24 | A. Yeah. So Bob Packer and I, you know, we |
| 04:13:13 | 25 | incorporated it in early '96. We raised -- we |

176

| | | |
|---|---|---|
| 04:13:20 | 1 | actually closed first angel round of funding on |
| 04:13:23 | 2 | Valentine's Day 1996, and we sort of set up business |
| 04:13:26 | 3 | officially as employees two weeks -- or a week later |
| 04:13:29 | 4 | actually. I joined two weeks later. So that's the |
| 04:13:32 | 5 | point where I left Packeteer officially. |
| 04:13:35 | 6 | Q. Or left -- |
| 04:13:37 | 7 | A. I'm sorry. Left Metricom. Metricom actually |
| 04:13:42 | 8 | invested in our angel round. So they were an early |
| 04:13:45 | 9 | investor with Packeteer. |
| 04:13:46 | 10 | Q. And how long were you at Packeteer? |
| 04:13:48 | 11 | A. So I was at Packeteer from inception through |
| 04:13:52 | 12 | November of 2002. |
| 04:13:52 | 13 | Q. Okay. And where did you go in 2002? |
| 04:13:56 | 14 | A. I left to join Air Space as a CEO. |
| 04:14:02 | 15 | Q. Okay. |
| 04:14:03 | 16 | A. Air Space was a wireless company. So back to |
| 04:14:06 | 17 | wireless ironically. And, coincidentally, one of the |
| 04:14:14 | 18 | cofounders of Air Space was the same Bob Friday who |
| 04:14:19 | 19 | had recruited me to Metricom. Air Space was |
| 04:14:24 | 20 | developing a product which subsequent to my joining |
| 04:14:26 | 21 | we shipped. It was an enterprise wireless LAN |
| 04:14:30 | 22 | system. |
| 04:14:31 | 23 | Q. Okay. All right. And was Air Space a |
| 04:14:36 | 24 | start-up? |
| 04:14:37 | 25 | A. Yeah. |

177

| | | |
|---|---|---|
| 04:14:38 | 1 | Q. And how long were you at Air Space? |
| 04:14:41 | 2 | A. So I was at Air Space through March of 2005. |
| 04:14:47 | 3 | Q. Okay. |
| 04:14:47 | 4 | A. That's when we closed the sale of the company |
| 04:14:50 | 5 | to Cisco. |
| 04:14:51 | 6 | Q. Okay. |
| 04:14:52 | 7 | A. And so I then joined Cisco -- |
| 04:14:55 | 8 | Q. All right. |
| 04:14:56 | 9 | A. -- as vice president and general manager of |
| 04:14:59 | 10 | the wireless networking business. |
| 04:15:01 | 11 | Q. Okay. And so you said of the wireless |
| 04:15:05 | 12 | networking business? |
| 04:15:06 | 13 | A. Yeah. |
| 04:15:07 | 14 | Q. Okay. And then you left Cisco when? |
| 04:15:09 | 15 | A. In November of 2011. |
| 04:15:12 | 16 | Q. Okay. |
| 04:15:13 | 17 | A. Before I -- you know, subsequent to joining |
| 04:15:17 | 18 | Cisco, I was promoted to senior vice president -- |
| 04:15:20 | 19 | Q. Okay. |
| 04:15:21 | 20 | A. -- of a bunch of stuff. But then I left in |
| 04:15:27 | 21 | November 2011. |
| 04:15:28 | 22 | Q. Okay. And did you leave in November 2011 for |
| 04:15:34 | 23 | your present job? |
| 04:15:35 | 24 | A. For my present ventures, yeah. I'm |
| 04:15:38 | 25 | effectively self-employed. |

45  (Pages 174 to 177)

EXHIBIT 37

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC and
INTELLECTUAL VENTURES II LLC,

      Plaintiffs,

v.

MOTOROLA MOBILITY LLC,

      Defendant.

Case No. 1:11-cv-908-SLR

---

**EXPERT REPORT OF DR. RANDY HOWARD KATZ
REGARDING
THE INVALIDITY OF U.S. PATENT NO. 7,409,450**

---

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

router depicted above.[2]   Thus, among other wireless access points that were available, a cable modem would have been an obvious choice as an access point to the Internet for the LAN.  I further understand that Mr. Galloway agreed that such a configuration was not only obvious, but was almost certainly in use prior to the priority date of the '450 patent.  Galloway Dep. Tr. at 147:6-22.  Further, one of skill in the art would have been well aware using such a wireless access device would have necessarily required coupling the wireless access device, and consequently the Packet Shaper system, to a base station over a wireless bandwidth.  Thus, it is my opinion that the Packet Shaper system discloses coupling the Packet Shaper system to a base station using a shared wireless bandwidth.

155.   In view of the foregoing, it is my opinion that Packet Shaper discloses "coupling one or more subscriber customer premise equipment (CPE) stations with a base station over a shared wireless bandwidth using a packet-centric protocol" as recited in claim 1.

> **b.   "allocating said wireless bandwidth and system resources based on contents of packets to be communicated over said wireless bandwidth, wherein the contents of each packet include a packet header and wherein the allocating is responsive to at least one field in the packet header."**

156.   Having reviewed the Packet Shaper materials, it is my opinion the Packet Shaper discloses "allocating said wireless bandwidth and system resources based on contents of packets to be communicated over said wireless bandwidth, wherein the contents of each packet include a packet header and wherein the allocating is responsive to at least one field in the packet header."

157.   I understand that the Packet Shaper system was described, in part, in the Riddle Provisional and the Riddle Patent.  *See, e.g.,* Riddle Provisional, 7:2-4; Galloway Dep. Tr. 242:1-246:25.  The Packet Shaper system is a system for classifying data "flows" and allocating a portion of the available bandwidth to each flow:

---

[2] I note that the '450 Patent itself explains that one suitable type of wireless access router would be a cable modem: "IP flow 626 from CPE 294d at CPE subscriber location 306d can be transmitted to base station antenna 290d over a wireless medium such as, e.g., RF communication, **cable modem** and satellite communication, from subscriber antenna 292d coupled to CPE 294d at CPE subscriber location 306d." '450 Patent, 49, 9-14 (emphasis added).

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

> According to the invention, in a packet communication environment, a method is provided for automatically classifying packet flows for use in allocating bandwidth resources by a rule of assignment of a service level. The method comprises applying individual instances of traffic classification paradigms to packet network flows based on selectable information obtained from a plurality of layers of a multi-layered communication protocol in order to define a characteristic class, then mapping the flow to the defined traffic class.

Riddle Provisional, 5:29-6:2.

158.    Packet Shaper explains that all of the TCP packets in a particular connection belong to the same "flow."  Riddle Provisional, 8:7-9.  For example, if a user uses her web browser to visit a particular web site, the web browser and the server hosting the web page will establish a TCP connection.  Once the TCP connection is established, the web server will begin transmitting TCP packets to the user's web server using the TCP connection.  In other words, while a number of TCP packets will be sent from the web page server to the user's browser, all of these TCP packets are part of the same TCP connection, and thus are part of the same flow.  Similarly, all packets sent from the user's computer to the web server are in the same flow.

159.    If the user is using a Packet Shaper system, the user's data flows over the Internet connection can be managed by the Packet Shaper system.  As was described above, a single Internet connection can provide access to either a large number of computers, or to a large number of different flows from one or more computers.  Thus, each of these flows contends for a portion of the bandwidth available on the Internet connection.  As discussed above, one of the Packet Shaper system's primary functions is to allocate a portion of the bandwidth to each flow, or to prevent new flows if there is insufficient bandwidth.  Packet Shaper User's Guide, v. 1.12 at BLUECOAT000181 to 186; *see also* Packet Shaper Data Sheet at MMI-IV1048886.

160.    Packeteer discloses that data flows are identified by inspecting information within TCP or UDP packets.  As quoted above, the Riddle Provisional discloses that "selectable information obtained from a plurality of layers of a multi-layered communication protocol in order to define a characteristic class, then mapping the flow to the defined traffic class."  Riddle Provisional, 5:29-6:2.  The Riddle Provisional further shows an example of a multi-layered communication protocol in Figure 1D:

61

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*



Riddle Provisional, Fig. 1D.

161.   The Riddle Provisional explains that Figure 1D illustrates the "constituents of the Transmission Control Protocol/Internet Protocol (TCP/IP) protocol suite" and describes the physical layer, data link layer, network layer, transport layer, and the session or application layer. *Id*. at 12:31-14-14.

162.   To classify data flows, any level of the TCP/IP protocol may be used.  *Id*. at 15:26.   For example, information about source and destination IP addresses, source and destination port information, application information, whether a flow is a TCP or UDP flow, URL information, etc.  *Id* at 15:19-17:25 *et seq*; *see also* Packet Shaper User's Guide, v. 1.12 at BLUECOAT000180.

62

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

Traffic Class Components

| Client Side | Server Side |
|---|---|
| IP Address/Domain Name | IP Address/Domain Name |
| | TCP or UDP Service, e.g. WWW, FTP, RealAudio, etc. URI for Web Service, e.g. "*.html", "*.gif", "/sales/*", etc. |

——

Table 2

Riddle Provisional, 17:13-25.

163.    As discussed previously, this information may be found in one or more levels of the protocol suite.  For example, source and destination IP addresses and information about whether a flow is a TCP or UDP may be found in header of an IP packet.  RFC 791 at MMI-IV1048321, 325.  Information about a source or destination port number may be found in the header of a TCP packet.  RFC 793 at MMI-IV1048374.  Information about application type or URL information may be found in upper layer application-specific headers or payloads of application packets.  See, e.g., Riddle Provisional, 15:26-16:5.  For example, an HTTP packet would include URL information within the payload of the HTTP packet.  Further, one of skill in the art would have understood that to transmit an HTTP packet over a TCP/IP connection, the HTTP packet is traditionally embedded as payload within a TCP packet, which is then embedded within the payload of an IP packet.  *See, e.g.,* Galloway Dep. Tr., 245:19-249:9.

164.    Packet Shaper discloses that bandwidth may be allocated to different data flows by creating policies applicable to the different data flows:

> Packeteer's PacketShaper™ allows you to proactively manage bandwidth allocation. PacketShaper lets you define and deliver specific *quality of service* levels for external users accessing your Web site and internal users accessing the Internet. By classifying traffic and assigning bandwidth management policies, you can offer users smooth, predictable service.

63

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

Packet Shaper User's Guide, v. 1.12 at BLUECOAT000149 (emphasis in original); *see also* Riddle Provisional, 15:18-24:11.

165.    In addition, Packet Shaper discloses:

PacketShaper can set *quality of service* levels for users. Each connection may have a guaranteed minimum bandwidth allocation. The allocation is adjusted so that connection activity is predictable. PacketShaper can also keep your access link from becoming a bottleneck. A new connection will not be permitted unless there is sufficient bandwidth to guarantee it a minimum rate through the link.

Packet Shaper User's Guide, v. 1.12 at BLUECOAT000149 (emphasis in original); *see also* Riddle

Provisional, 15:18-24:11.  Packet Shaper discloses that it uses traffic classes to manage bandwidth

and resource allocation to different flows using various policies:

## Managing the Traffic That Matters Most

PacketShaper allows you to set up *traffic classes* and assign appropriate bandwidth usage *policies* to those classes. A traffic class can be:

- A connection leading to or from a specific server or client such as all traffic generated by your Web server.
- Traffic generated by a specific application such as Web traffic (HTTP) or file transfer traffic (FTP).
- A subset of Web site traffic such as HTTP graphics (`*.gif`), video (`*.mpeg`) or directory (`/sales/*`).

PacketShaper lets you define and manage the traffic that concerns you most. Because PacketShaper is "web-aware," you can hone directly in on the portion of traffic for which you want to ensure quality of service.

Once you define a traffic class, you can set policies to limit its connection speeds. Different service levels may be specified for high-speed (ISDN and T-1) and low-speed (14.4 and 28.8 Kbps) users.

Packet Shaper User's Guide, v. 1.12 at BLUECOAT000149 (emphasis in original); *see also* Riddle

Provisional, 15:18-24:11.  These policies may classify flows according to various information

"based on selectable information obtained from a plurality of layers of a multi-layered

communication protocol in order to define a characteristic class, then mapping the flow to the

defined traffic class."  Riddle Provisional, 5:29-6:2.  For example, the Packet Shaper User's

Guide gives an example of creating a new traffic class:

64

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

## Creating Traffic Classes

In the objectives we identified the traffic classes by application that we were most concerned with: Web traffic (HTTP), FTP and telnet. The following commands are used to create these classes:

```
class new outbound web_server BOTH 111.222.33.44:32:0 0:0:0
```

This command creates a traffic class "web_server," encompassing all of the outbound traffic for the server 111.222.33.44. The mask is 32, indicating that

Packet Shaper User's Guide, v. 1.12 at BLUECOAT000194.  *See also* Riddle Provisional, 24:13-26:8.

166.    This portion of the Packet Shaper User's Guide discloses that outbound packets from web server having IP address 111.222.33.44 will be inspected for compliance with one or more policies (discussed in more detail below).  As discussed above, IP address information is carried in the header of IP packets.  Thus, to identify outbound packets associated with this new traffic class, the Packet Shaper system must inspect at least the IP packet header of outbound packets.  In addition, this new class also specifies "port number" information, which is information carried in the TCP or UDP packet header:

111.222.33.x. The port value for web_server's traffic specification is 0 (zero). A zero means "match all," and therefore, in the example, means all traffic generated by server 111.222.33.44.

Packet Shaper User's Guide, v. 1.12 at BLUECOAT000195.  *See also* Riddle Provisional, 24:13-26:8.

167.    In addition, Packet Shaper discloses the creation of additional "child" traffic classes based on the new traffic class just created.  These "child" traffic classes use the information from their "parent" traffic classes.  Packet Shaper User's Guide, v. 1.12 at BLUECOAT000195.  The Packet Shaper User's Guide, v. 1.12 discloses a number of child traffic classes based on the new parent traffic class described above.  Specifically, it describes 5 separate child traffic classes:

65

**IA0800**

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

```
class new web_server fast_html TCP 0:0:80 0:0:0 "*.htm*"
```

The class "fast_html" is URL-based. It consists of all outbound traffic with the suffix `.htm` or `.html`. The 80 specifies the port number for HTTP applications—that is, Web traffic. For other assigned port numbers, see "Well-Known Ports for Common Applications" on page 63.

```
class new web_server other_http TCP 0:0:80 0:0:0
```

The class "other_http" consists of all other HTTP traffic—basically the graphics portion of the server's outbound traffic, such as `.gif` and `.jpeg` files. The next command creates a traffic class "admin_ftp," which encompasses FTP files being transferred from the Web server to the system administrator's computer (111.222.33.99):

```
class new web_server admin_ftp tcp 0:0:20-21 111.222.33.99:32:0
```

The following command creates "admin_telnet," which encompasses telnet traffic being transferred from the Web server to the system administrator's computer.

```
class new web_server admin_telnet tcp 0:0:23 111.222.33.99:32:0
```

The following command creates an inbound traffic class "down_ftp." This class and "admin_ftp" will allow the system administrator to create policies for quick FTP file transfers between the administrator's computer and the Web server.

```
class new inbound down_ftp tcp 111.222.33.44:32:20-21
    111.222.33.99:32:0
```

168.    Packet Shaper User's Guide, v. 1.12 at BLUECOAT000195. *See also* Riddle Provisional, 24:13-26:8. The first of these traffic classes discloses that all outbound traffic with the suffix "*.htm" or "*.html" is covered by this traffic class. Suffix information is carried within TCP payloads and thus would require inspecting the payloads of TCP packets. *See also* Galloway Dep. Tr., 245:19-249:9.

169.    Thus, Packet Shaper discloses allocating bandwidth based on information contained within headers, as well as payloads, of outbound packets, i.e. packets to be transmitted.

170.    When allocating bandwidth, Packet Shaper also allocates system resources. For example, certain versions of Packet Shaper were limited to 2,000 simultaneous TCP connections, and 2,000 simultaneous UDP connections. Packet Shaper FAQ at MMI-IV1048890. When a

66

**IA0801**

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

new TCP or UDP connection is established, Packet Shaper must allocate a portion of its connection capacity to the new connection.

171.    Based on the foregoing, and the other Packet Shaper materials considered for this report, it is my opinion that Packet Shaper discloses "allocating said wireless bandwidth and system resources based on contents of packets to be communicated over said wireless bandwidth, wherein the contents of each packet include a packet header and wherein the allocating is responsive to at least one field in the packet header."

172.    Therefore, it is my opinion that the Packet Shaper system as discussed above invalidates claim 1.

### 2.    Claim 2

173.    It is my opinion that Packet Shaper discloses each and every element of claim 2, and thus claim 2 is invalid.

174.    I have inserted claim 2 in its entirety below for reference:

2. The method of claim 1, wherein said packet-centric protocol comprises transmission control protocol/internet protocol (TCP/IP).

175.    Packet Shaper discloses that it operates on different data flows and it explicitly states that a data flow may be all packets in a TCP connection.  Riddle Provisional, 8:7-9.  In addition, as discussed above, the Riddle Provisional discusses that to perform its bandwidth and resource allocation function, it examines multiple layers of a multi-layered protocol.  *Id* at 5:31-6:2.  Riddle Provisional further discloses that one such multi-layered protocol may be the TCP/IP protocol.  Further, the Riddle Provisional identifies TCP Service information as information used to identify traffic classes. Riddle Provisional, p. 17, Table 2.  In addition, the Packet Shaper RSVP document emphases that Packet Shaper "[h]andles all TCP and UDP traffic – especially adding value to Web traffic control."   Packet Shaper RSVP at MMI-IV1048894; s*ee also* Controlling TCP.

67

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

206.    As discussed above with respect to claim 6, Packet Shaper discloses that the packets to be communicated may be from a data network. Packet Shaper further discloses that the data network may be a local area network and a wired network. For example, Figure 1 from the Packet Shaper ISP document shows a wired LAN with multiple servers configured to transmit packets to the Internet using the Packet Shaper system. Thus, for data packets to be transmitted to the Internet, the packets to be communicated are from a wired LAN. In addition, as Mr. Galloway testified, when used in combination with the wireless Ricochet network, the data network may be a wireless network and, depending on the size of the Ricochet network, may be either a LAN or a WAN.

207.    Thus, Packet Shaper discloses "wherein said data network comprises at least one of: a wireline network; a wireless network; a local area network; and/or a wide area network," and invalidates claim 7.

### 8.    Claim 8

208.    It is my opinion that Packet Shaper discloses each and every element of claim 8, and thus claim 8 is invalid.

209.    I have inserted claim 8 in its entirety below for reference:

8. The method of claim 1, wherein said allocating is further based on a packet payload contents.

210.    Packet Shaper discloses that in addition to examining packet headers, it may also perform "deep packet inspection" to identify information about the data flow, such as whether web pages, video files, or other data is being transmitted within the data flow. Such information is not found in a packet header, but rather is found within the payload of the packet. Packet Shaper discloses that the data gathered from the packet header and from the packet payload is used to classify the data flow and to allocate bandwidth to the data flow.

211.    For example, source and destination IP addresses and information about whether a flow is a TCP or UDP may be found in header of an IP packet. RFC 791 at MMI-IV1048321, 325. Information about a source or destination port number may be found in the header of a TCP

76

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

packet.  RFC 793 at MMI-IV1048374.  Information about application type or URL information may be found in upper layer application-specific headers or payloads of application packets. See, e.g., Riddle Provisional, 15:26-16:5.  For example, an HTTP packet would include URL information within the payload of the HTTP packet.  Further, one of skill in the art would have understood that to transmit an HTTP packet over a TCP/IP connection, the HTTP packet is traditionally embedded as payload within a TCP packet, which is then embedded within the payload of an IP packet.  *See, e.g.,* Galloway Dep. Tr., 245:19-249:9.

212.   For example, as discussed above, the Packet Shaper User's Guide, v. 1.12 discloses a number of child traffic classes based on the new parent traffic class described above. Specifically, it describes 5 separate child traffic classes:

77

*U.S. Patent No. 7,409,450 – Invalidity Expert Report*

```
class new web_server fast_html TCP 0:0:80 0:0:0 "*.htm*"
```

The class "fast_html" is URL-based. It consists of all outbound traffic with the suffix .htm or .html. The 80 specifies the port number for HTTP applications—that is, Web traffic. For other assigned port numbers, see "Well-Known Ports for Common Applications" on page 63.

```
class new web_server other_http TCP 0:0:80 0:0:0
```

The class "other_http" consists of all other HTTP traffic—basically the graphics portion of the server's outbound traffic, such as .gif and .jpeg files. The next command creates a traffic class "admin_ftp," which encompasses FTP files being transferred from the Web server to the system administrator's computer (111.222.33.99):

```
class new web_server admin_ftp tcp 0:0:20-21 111.222.33.99:32:0
```

The following command creates "admin_telnet," which encompasses telnet traffic being transferred from the Web server to the system administrator's computer.

```
class new web_server admin_telnet tcp 0:0:23 111.222.33.99:32:0
```

The following command creates an inbound traffic class "down_ftp." This class and "admin_ftp" will allow the system administrator to create policies for quick FTP file transfers between the administrator's computer and the Web server.

```
class new inbound down_ftp tcp 111.222.33.44:32:20-21
   111.222.33.99:32:0
```

213.    Packet Shaper User's Guide, v. 1.12 at BLUECOAT000195.  *See also* Riddle Provisional, 24:13-26:8.  The first of these traffic classes discloses that all outbound traffic with the suffix "*.htm" or "*.html" is covered by this traffic class.  Suffix information is carried within TCP payloads and thus would require inspecting the payloads of TCP packets.  When applying its traffic classes, Packet Shaper discloses allocating bandwidth based on information contained within headers of packets, as well as payloads of packets, of outbound packets, i.e. packets to be transmitted.

214.    Thus, Packet Shaper discloses "wherein said allocating is further based on a packet payload contents," and therefore claim 8 is invalid.

78

**IA0805**

# EXHIBIT 38

RFC:  791

INTERNET PROTOCOL

DARPA INTERNET PROGRAM

PROTOCOL SPECIFICATION

September 1981

prepared for

Defense Advanced Research Projects Agency
Information Processing Techniques Office
1400 Wilson Boulevard
Arlington, Virginia  22209

by

Information Sciences Institute
University of Southern California
4676 Admiralty Way
Marina del Rey, California  90291

September 1981

                                                        Internet Protocol


                          3.  SPECIFICATION

3.1.  Internet Header Format

A summary of the contents of the internet header follows:

```
 0                   1                   2                   3
 0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1 2 3 4 5 6 7 8 9 0 1
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+
|Version|  IHL  |Type of Service|          Total Length         |
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+
|         Identification        |Flags|      Fragment Offset    |
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+
|  Time to Live |    Protocol   |         Header Checksum        |
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+
|                       Source Address                          |
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+
|                    Destination Address                        |
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+
|                    Options                    |    Padding     |
+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+-+
```

                   Example Internet Datagram Header

                            Figure 4.

Note that each tick mark represents one bit position.

Version:  4 bits

   The Version field indicates the format of the internet header.  This
   document describes version 4.

IHL:  4 bits

   Internet Header Length is the length of the internet header in 32
   bit words, and thus points to the beginning of the data.  Note that
   the minimum value for a correct header is 5.

                               **IA0807**

September 1981

Internet Protocol
Specification

Type of Service:  8 bits

The Type of Service provides an indication of the abstract
parameters of the quality of service desired.  These parameters are
to be used to guide the selection of the actual service parameters
when transmitting a datagram through a particular network.  Several
networks offer service precedence, which somehow treats high
precedence traffic as more important than other traffic (generally
by accepting only traffic above a certain precedence at time of high
load).  The major choice is a three way tradeoff between low-delay,
high-reliability, and high-throughput.

```
  Bits 0-2:  Precedence.
  Bit   3:   0 = Normal Delay,      1 = Low Delay.
  Bits  4:   0 = Normal Throughput, 1 = High Throughput.
  Bits  5:   0 = Normal Relibility, 1 = High Relibility.
  Bit  6-7:  Reserved for Future Use.

     0     1     2     3     4     5     6     7
  +-----+-----+-----+-----+-----+-----+-----+-----+
  |                 |     |     |     |     |     |
  |   PRECEDENCE    |  D  |  T  |  R  |  0  |  0  |
  |                 |     |     |     |     |     |
  +-----+-----+-----+-----+-----+-----+-----+-----+

     Precedence

        111 - Network Control
        110 - Internetwork Control
        101 - CRITIC/ECP
        100 - Flash Override
        011 - Flash
        010 - Immediate
        001 - Priority
        000 - Routine
```

The use of the Delay, Throughput, and Reliability indications may
increase the cost (in some sense) of the service.  In many networks
better performance for one of these parameters is coupled with worse
performance on another.  Except for very unusual cases at most two
of these three indications should be set.

The type of service is used to specify the treatment of the datagram
during its transmission through the internet system.  Example
mappings of the internet type of service to the actual service
provided on networks such as AUTODIN II, ARPANET, SATNET, and PRNET
is given in "Service Mappings" [8].

[Page 12]

IA0808

September 1981

The Network Control precedence designation is intended to be used within a network only.  The actual use and control of that designation is up to each network. The Internetwork Control designation is intended for use by gateway control originators only. If the actual use of these precedence designations is of concern to a particular network, it is the responsibility of that network to control the access to, and use of, those precedence designations.

Total Length:  16 bits

  Total Length is the length of the datagram, measured in octets, including internet header and data.  This field allows the length of a datagram to be up to 65,535 octets.  Such long datagrams are impractical for most hosts and networks.  All hosts must be prepared to accept datagrams of up to 576 octets (whether they arrive whole or in fragments).  It is recommended that hosts only send datagrams larger than 576 octets if they have assurance that the destination is prepared to accept the larger datagrams.

  The number 576 is selected to allow a reasonable sized data block to be transmitted in addition to the required header information.  For example, this size allows a data block of 512 octets plus 64 header octets to fit in a datagram.  The maximal internet header is 60 octets, and a typical internet header is 20 octets, allowing a margin for headers of higher level protocols.

Identification:  16 bits

  An identifying value assigned by the sender to aid in assembling the fragments of a datagram.

Flags:  3 bits

  Various Control Flags.

    Bit 0: reserved, must be zero
    Bit 1: (DF) 0 = May Fragment,  1 = Don't Fragment.
    Bit 2: (MF) 0 = Last Fragment, 1 = More Fragments.



```
      0   1   2
    +---+---+---+
    |   | D | M |
    | 0 | F | F |
    +---+---+---+
```

Fragment Offset:  13 bits

  This field indicates where in the datagram this fragment belongs.

                                                              [Page 13]

**IA0809**

September 1981

Internet Protocol
Specification


The fragment offset is measured in units of 8 octets (64 bits).  The
first fragment has offset zero.

Time to Live:  8 bits

This field indicates the maximum time the datagram is allowed to
remain in the internet system.  If this field contains the value
zero, then the datagram must be destroyed.  This field is modified
in internet header processing.  The time is measured in units of
seconds, but since every module that processes a datagram must
decrease the TTL by at least one even if it process the datagram in
less than a second, the TTL must be thought of only as an upper
bound on the time a datagram may exist.  The intention is to cause
undeliverable datagrams to be discarded, and to bound the maximum
datagram lifetime.

Protocol:  8 bits

This field indicates the next level protocol used in the data
portion of the internet datagram.  The values for various protocols
are specified in "Assigned Numbers" [9].

Header Checksum:  16 bits

A checksum on the header only.  Since some header fields change
(e.g., time to live), this is recomputed and verified at each point
that the internet header is processed.

The checksum algorithm is:

The checksum field is the 16 bit one's complement of the one's
complement sum of all 16 bit words in the header.  For purposes of
computing the checksum, the value of the checksum field is zero.

This is a simple to compute checksum and experimental evidence
indicates it is adequate, but it is provisional and may be replaced
by a CRC procedure, depending on further experience.

Source Address:  32 bits

The source address.  See section 3.2.

Destination Address:  32 bits

The destination address.  See section 3.2.



[Page 14]