IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) | Civ. No. 11-908-SLR |
| MOTOROLA MOBILITY LLC, | ) <br> ) <br> ) | |
| Defendant. | ) | |

**FINAL JURY INSTRUCTIONS**

Dated:  February 4, 2014

# GENERAL INSTRUCTIONS

## INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

## JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented.  I will instruct you about the burden of proof shortly.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

2

## EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my comments or questions are evidence.  The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have

3

shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

5

## CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## USE OF NOTES

You may use notes taken during the trial to assist your memory.  Remember that your notes are for your personal use.  They may not be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented and, thus, not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

8

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

9

## NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

## EXPERT WITNESSES

When knowledge of technical subject matter might be helpful to the jury, a person who has special training or experience in that technical field – he or she is called an expert witness – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

## DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically played.  This testimony must be given the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## THE PARTIES AND THEIR CONTENTIONS

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

Plaintiffs are Intellectual Ventures I and Intellectual Ventures II, collectively "Intellectual Ventures."

Defendant is Motorola Mobility LLC, which I will refer to as "Motorola Mobility."

Plaintiff Intellectual Ventures I is the owner/assignee of U.S. Patent Nos. 6,557,054 and 6,658,464.  Plaintiff Intellectual Ventures II is the owner of U.S. Patent No. 7,120,462.  I will refer to each of these patents by their last three numbers:  "the '462 patent," "the '054 patent," and "the '464 patent."

Defendant Motorola Mobility markets various telephones and accessories with the names Atrix 2, Atrix 4G, Atrix HD, Admiral, Electrify, Electrify 2, Electrify M, Photon 4G, Photon Q 4G LTE, Defy XT, XT 886, XPRT, Titanium, Triumph, Rambler, Bali, i576, Quantico, Brute i680, Brute i686, Clutch i475, i412, i886, Milestone X, Theory, i867, Motorola Lapdock for Atrix 4G, Motorola Lapdock 100, and the Motorola Lapdock 500 Pro.  I may refer to these products collectively as the "accused products."

Intellectual Ventures contends that certain of the accused products infringe claims 1, 8, 10, 11, and 13 of the '462 patent, claims 151, 159, 162, 181, 189, and 192 of the '054 patent, and claims 1, 8, 16, and 17 of the '464 patent.  These claims will be referred to as the "asserted claims."  Motorola Mobility contends it does not infringe any claim asserted by Intellectual Ventures.  Motorola Mobility further contends that the

13

asserted claims are invalid because the asserted claims are not new and novel inventions, are obvious inventions, and fail to meet certain other legal requirements of a valid patent.

## BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing" evidence.

Intellectual Ventures must prove its claims of patent infringement by a preponderance of the evidence. When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true. To put it differently, if you were to put plaintiff's and defendant's evidence of infringement on opposite sides of a scale, the evidence supporting plaintiff's assertions would have to make the scale tip somewhat to plaintiff's side. You must decide, as to each of the asserted claims, whether Intellectual Ventures has proven, by a preponderance of the evidence, that the claim is infringed.

Clear and convincing evidence is a higher burden of proof than a preponderance of the evidence. Motorola Mobility has the burden of proving that each one of the asserted claims is invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. You must decide, as to each of the asserted claims, whether Motorola Mobility has proven, by clear and convincing evidence, that the claim is invalid by reason of anticipation and/or obviousness in light of the prior art and the ordinary skill of

15

one in the art.  I will explain these concepts to you further in a moment.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt."  That burden does not apply in a civil case and you, therefore, should put it out of your mind in considering whether or not Intellectual Ventures has met its "more likely than not" burden of proof or Motorola Mobility has met its "clear and convincing" burden of proof.

## THE PATENT CLAIMS

## PATENT CLAIMS GENERALLY

Before you can decide whether or not any of the asserted claims are infringed or invalid, you will have to understand what patent "claims" are. Patent claims are the numbered paragraphs at the end of a patent.

The purpose of the claims is to provide notice to the public of what a patent covers and does not cover. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.

Claims are usually divided into parts, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim. A claim covering the invention of a table is called an apparatus claim. A claim describing the steps required to make a table is called a method claim.

17

## DEPENDENT AND INDEPENDENT CLAIMS

There are two different types of claims in a patent. The first type is called an "independent" claim. An independent claim does not refer to any other claim of the patent. An independent claim is read alone to determine its scope.

For example, claim 1 of the '462 patent is an independent claim. You know this because claim 1 does not refer to any other claims. Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 8 of the '462 patent is a dependent claim. If you look at claim 8, it refers to claim 1. Therefore, to determine what claim 8 covers, you must consider both the words of claims 1 and 8 together.

18

## OPEN-ENDED OR "COMPRISING" CLAIMS

Several claims of the patents-in-suit use the transitional term "comprising." "Comprising" is interpreted the same as "including" or "containing."  In patent claims, comprising means that the claims are open-ended, that is, the claims are not limited to products that include only what is in the claim and nothing else.

If you find that any accused product or method includes all of the limitations in any of the asserted claims that use the term "comprising," the fact that it may also include additional elements or components is irrelevant.  The presence of additional elements or components does not mean that the method or product does not infringe a patent claim.

Similarly, if you find that the prior art includes all of the limitations in any of the asserted claims that use the word "comprising," the fact that it may also include additional elements is irrelevant.  The presence of additional elements or components does not mean that the prior art does not invalidate a patent claim.

19

## CLAIM CONSTRUCTION

It is my duty under the law to define what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use the meaning of each claim for your decision on infringement and validity.

You must ignore any different interpretation given to these terms by the witnesses or by attorneys.

I instruct you that the following claim terms have the following definitions:

For the '462 patent:

The term **"central processor"** means "the part of a computer system that performs the primary computational functions, e.g., to control the operation of various circuits."

The term **"detachable handset"** means "a device that can be attached to and detached from the portable docking display unit and is small enough to be held in one hand."

The term **"interface"** means "a shared electrical boundary between parts of a computer system, through which information is conveyed."

For the '054 patent:

The term **"presenting a directory of software available for installation on the user station"** means "displaying a directory of software available for installation on the user station."

The term **"presenting a directory of software available for installation on the**

20

**user station and not already installed on the user station"** means "displaying a directory of software available for installation on the user station but not displaying any software already installed on the user station."

For the '464 patent:

The term **"content"** means "any form of electronic information."

The term **"effect presentation of the stored content to the user at the user station with a user interface that is customized to the respective publishers"** means "display user-selected content in a manner specific to the publisher/source of the content." The patent does not require that the software product itself present the stored content with a customized user interface, but that it contain instructions that, when executed, allow the display of a user interface that has been customized to the respective publisher by the publisher or source of the content.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.

## PATENT INFRINGEMENT

## OVERVIEW

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells (within the United States), offers to sell (from within the United States), or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. In this case, Intellectual Ventures alleges that Motorola Mobility directly infringes the asserted claims either literally or under the doctrine of equivalents. Intellectual Ventures also asserts that Motorola Mobility contributes to or induces the infringement of the asserted claims.

You must decide whether or not Intellectual Ventures has proven, by a preponderance of the evidence, that Motorola Mobility has made, used, sold (within the United States), or offered for sale (from within the United States) a product or method covered by any of the asserted claims. If Motorola Mobility infringes one asserted claim of any patent, then it infringes that patent, even if, in good faith, Motorola Mobility believes that it does not infringe. A defendant's knowledge or intent to directly infringe is not relevant.

22

## DIRECT INFRINGEMENT BY LITERAL INFRINGEMENT

In order to prove direct infringement, Intellectual Ventures must prove that each limitation of an asserted claim is present in an accused product or method.  A claim limitation may be present in an accused product or method in one of two ways:  either literally or under the "doctrine of equivalents."  I will explain the doctrine of equivalents to you momentarily.

A claim limitation is literally present if it exists in an accused product or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand its ordinary meaning.

Literal infringement must be determined with respect to each asserted claim individually by comparing the elements of the accused product or method to each of that claim's limitations.  If the accused product or method omits any single limitation recited in a given claim, then you must find that Motorola Mobility has not infringed that claim. You must determine infringement with respect to each asserted claim and each accused product or method individually.

In determining whether any accused product or method literally infringes any asserted claim, you should take the following steps:

First, you should determine the scope of the asserted claim by reading the claim language, limitation by limitation, as those limitations have been construed by the court or, if they have not been specifically construed, according to their ordinary meaning; and

Second, you should compare the accused product or method, element by

23

element, to each of the limitations of the asserted claim.

If you find each and every limitation of the asserted claim in the accused product or method, you must return a verdict of direct infringement as to that claim.

If you do not find each and every limitation of the asserted claim in the accused product or method, either literally or by equivalents, you may not return a verdict of direct infringement as to that claim.

You must repeat the above analysis with every asserted claim.  There is one exception to this rule.  If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product or method meets the additional requirements of any claims that depend from the independent claim, thus, whether those dependent claims have also been infringed.

## INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Under the doctrine of equivalents, a product or method can infringe an asserted

claim if it includes parts that are identical or equivalent to the limitations of the claim.

Intellectual Ventures asserts that the following limitations of the following

asserted claims can be met under the doctrine of equivalents:

### As to claim 1 of the '464 patent:

"Effect presentation of the stored content to the user at the user station with a

user interface that is customized to the respective publishers."

### As to claim 181 of the '054 patent:

"Presenting a directory of software available for installation on the user station

and not already installed on the user station."

You may find that a claim limitation is present in an accused product or method

under the doctrine of equivalents if a person having ordinary skill in the art would have

considered the differences between that claim limitation and a comparable element to

be "insubstantial" or would have found that the structure or step: (1) performs

substantially the same function; and (2) works in substantially the same way (3) to

achieve substantially the same result as the requirement of the claim.  In order for the

structure or step to be considered interchangeable, the structure or step must have

been known at the time of the alleged infringement to a person having ordinary skill in

the art.  Interchangeability at the present time is not sufficient.  In order to prove

infringement by "equivalents," Intellectual Ventures must prove the equivalency of the

25

structure or steps to a claim limitation by a preponderance of the evidence.

## INDIRECT INFRINGEMENT – INDUCING PATENT INFRINGEMENT

In addition to direct infringement, there are two types of indirect infringement: inducing infringement and contributory infringement.  Intellectual Ventures asserts that Motorola Mobility induces and/or contributes to the direct infringement of the asserted claims by customers or end-users of the accused products.  I will first explain the standard for inducement of infringement.  I will explain contributory infringement to you momentarily.

Motorola Mobility induces patent infringement if it purposefully causes, urges, or encourages another to infringe a patent.  Inducing infringement cannot occur unintentionally.  This is different from direct infringement which, as I have told you, can occur unintentionally.

To prove that Motorola Mobility induced patent infringement, Intellectual Ventures must prove four things by a preponderance of the evidence for each of the claims that Intellectual Ventures asserts Motorola Mobility induced infringement:

First, that Motorola Mobility caused, encouraged, or instructed its customers or end-users to use the accused products in a manner that you, the jury, find directly infringes the asserted claims.

Second, that Motorola Mobility knew of the '462 patent, the '054 patent, and the '464 patent.

Third, that Motorola Mobility intended for infringement to occur and knew or should have known that its encouragement or instructions would likely result in the

27

customers or end-users infringing the '462 patent, the '054 patent, and the '464 patent, in other words, using a patented product or performing the patented method.

Fourth, that Motorola Mobility's customers or end-users actually and directly infringed the '462 patent, the '054 patent, and the '464 patent.

You may find that Motorola Mobility induced patent infringement only if you are persuaded that each of these four factors is met.

## INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT

Intellectual Ventures also asserts that Motorola Mobility's selling or supplying the accused products is contributing to the infringement of the asserted claims.

Contributory infringement can occur when a supplier provides a part or a component to another for use in a patented product or method. In order to establish that Motorola Mobility has contributorily infringed, Intellectual Ventures must prove five things by a preponderance of the evidence for each of the claims that Intellectual Ventures asserts is contributorily infringed:

For the '462 patent, first that Motorola Mobility knew of the '462 patent.

Second, that Motorola Mobility sold or supplied the Lapdock products and that the Lapdock is a material component of the claimed product.  In other words, Intellectual Ventures must prove that the Lapdock products are especially made or adapted for use in a product that infringes the patent.

Third, that Motorola Mobility knew and intended that the Lapdock products would be used in a product directly infringing the '462 patent.

Fourth, that the Lapdock products are not a staple or commodity article, in other words, the Lapdock products do not have a substantial non-infringing use or, alternatively, a number of non-infringing uses.  Providing a staple or commodity article is not contributory infringement.

Fifth, the Lapdock products were actually used as part of a system that you, the jury, find infringes the asserted claims.

29

For the '054 patent, first that Motorola Mobility knew of the '054 patent.

Second, that software performing the method for distributing software or software updates described in the '054 patent is a material component of the claimed product/apparatus for use in practicing the patented method and Motorola Mobility sold or supplied products containing instructions that form a directory. In other words, Intellectual Ventures must prove that software performing the method for distributing software or software updates described in the '054 patent is especially made or adapted for use in a manner that infringes the patent.

Third, that Motorola Mobility knew and intended that its products containing software performing the method for distributing software or software updates described in the '054 patent would be used in a manner directly infringing the '054 patent.

Fourth, that software performing the method for distributing software or software updates described in the '054 patent is not a staple or commodity article, in other words, software performing the method for distributing software or software updates described in the '054 patent do not have a substantial non-infringing use or, alternatively, a number of non-infringing uses. Providing a staple or commodity article is not contributory infringement.

Fifth, software performing the method for distributing software or software updates described in the '054 patent were actually used in a manner that you, the jury, find infringes the asserted claims.

For the '464 patent, first that Motorola Mobility knew of the '464 patent.

30

Second, that the software enabling selection, transport, download, and customized display is a material component of the claimed product/apparatus for use in practicing the patented method and Motorola Mobility sold or supplied products containing this functionality.  In other words, Intellectual Ventures must prove that the software enabling selection, transport, download, and customized display is especially made or adapted for use in a manner that directly infringes the patent.

Third, that Motorola Mobility knew and intended that its products containing the software enabling selection, transport, download, and customized display would be used in a manner infringing the '464 patent.

Fourth, that the software enabling selection, transport, download, and customized display is not a staple or commodity article, in other words, the application delivery functionality does not have a substantial non-infringing use or, alternatively, a number of non-infringing uses.  Providing a staple or commodity article is not contributory infringement.

Fifth, the software enabling selection, transport, download, and customized display was actually used in a manner that you, the jury, find infringes the asserted claims.

31

## VALIDITY

## INTRODUCTION

As I stated previously, Motorola Mobility contends that the asserted claims are invalid. I will now explain to you each of the grounds for invalidity that were presented by Motorola Mobility at trial. A party must meet its burden of proof on only one ground in order to invalidate a claim. In making your determination as to invalidity, you should consider each claim separately.

## AFFIRMATIVE DEFENSE OF INVALIDITY GENERALLY

For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious. The terms "new," "useful" and "nonobvious" have special meanings under the patent laws. I will explain these terms to you as we discuss Motorola Mobility's grounds for asserting invalidity.

Motorola Mobility has challenged the validity of the asserted claims on a number of grounds. Although the patent was granted by the Patent and Trademark Office, it is your job to determine whether Motorola Mobility has proven, by clear and convincing evidence, that the legal requirements for patentability were not met.

I will now explain to you Motorola Mobility's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

33

## PRIOR ART

As I stated previously, under the patent laws, a person is granted a patent only if the invention claimed in the patent is new and not obvious in light of what came before. That which came before is referred to as the "prior art." Motorola Mobility must prove, by clear and convincing evidence, that these items are prior art. In order to do so, Motorola Mobility must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include:

First, anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention.

Second, anything that was in public use or on sale in the United States more than one year before the application for the patent was filed. In this case, that means anything that was in public use or on sale in the United States before the critical date, which I will explain in a moment.

Third, anything that was described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the application for the patent was filed.

Fourth, anything that was invented by another person in this country before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention.

Each patent-in-suit was filed on a different date. Therefore, you must decide whether the asserted claims are invalid in view of the prior art and the ordinary skill in

34

the art as it existed as of the date of invention of the patent in question.

The prior art relevant to each of Motorola Mobility's claims will be listed for you in connection with the instructions relating to that claim.  In this case, for the '054 and '464 patents, you must determine the date of invention for the claimed invention of the asserted patents, so that you can then determine if the prior art listed is, indeed, art that predated the date of the invention for these patents.  More specifically,

1.  DTX 132, Compuserve Source Code File - dppver.c;

2.  DTX 133, Compuserve Source Code File - VERS1.HI;

3.  DTX 149, Dennis J. Reynolds, "Evaluating Dial-Up Internet Access Options," Computers in Libraries, 1993.

Generally, the date of invention for a patent is presumed to be the date on which the application that led to the patent was filed.  For the '054 and '464 patents, the applications that resulted in those patents issuing were filed on April 20, 2000. Intellectual Ventures, however, claims priority to an earlier patent application filed on May 31, 1994.  To prove this earlier application date, Intellectual Ventures must prove that a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

Intellectual Ventures also contends that the '054 and '464 patents are entitled to a date of invention of September 30, 1993, the date on which it alleges that Mr.

Reisman conceived of all of the limitations of the asserted claims of those patents. Intellectual Ventures bears the burden to prove, by clear and convincing evidence, that it is entitled to this earlier invention date by showing that Mr. Reisman conceived of the asserted claims then, and that he was diligent in reducing the invention to practice.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor had to have a prototype built, or actually explained his or her invention to another person. But there must be some evidence beyond the inventor's own testimony that corroborates the date on which the inventor had the complete idea. Such evidence may include drawings, disclosure to another person, or other forms of evidence presented at trial.

Diligence means working continuously, though not necessarily every day. A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose. An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.

36

For a prior art patent, the date that the prior art patent was filed becomes the relevant date for the prior art patent as an invalidity reference.  If a patent that is alleged to be prior art claims priority back to an earlier filed patent application, then the patent is prior art as of the date the earlier application was filed if the patent and the earlier application each contain the same substance.

## ANTICIPATION

### GENERALLY

In order for someone to be granted a patent, the invention must actually be "new." In general, inventions are new when they have not been made, used, or disclosed before. Invalidity by anticipation requires the presence in a single prior art disclosure of all requirements, or limitations, of a claimed invention arranged as in the claim. For a claim to be anticipated, each claim limitation must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those limitations must also be disclosed, either expressly or inherently, in that same prior art reference.

The requirement that the prior art limitations themselves be "arranged as in the claim" means that claims cannot be treated as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning.

You should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must necessarily include the unstated limitation. Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.

The description provided in the prior art must be such that a person of ordinary

38

skill in the art in the field of invention could, based on the reference, practice the invention without undue experimentation. For a prior art reference that is an issued United States patent, the reference is presumed to meet this requirement.

To prevail on its defense of invalidity by anticipatory prior art, Motorola Mobility must prove, by clear and convincing evidence, that a single prior art reference, as defined above, discloses each of the limitations of the claims as identified below:

**As to claims 1 and 11 of the '462 patent:**

    a.    DTX 61, U.S. Patent No. 5,436,742 to Kobayashi ("Kobayashi");

    b.    DTX 2, U.S. Patent No. 5,436,857 to Nelson ("Nelson").

**As to claims 1, 8, 16, and 17 of the '464 patent:**

    a.    DTX 153, Bowen & Payton, "How to Get the Most Out of CompuServe," 5th ed., 1991 ("1991 CompuServe Book");

    b.    DTX 155, U.S. Patent No. 4,654,799 to Ogaki ("Ogaki").

## OBVIOUSNESS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. This is because granting patent protection to advances that would occur in the ordinary course, without real innovation, retards progress and may deprive prior inventions of their value or utility.

The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

In arriving at your decision on the issue of whether or not the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should first determine the scope and content of the prior art. This means that you should determine what prior art was reasonably pertinent to the particular problems the inventor faced.

Prior art must be "analogous art" to be relevant to your consideration of obviousness. Analogous art may be art from the same field of endeavor. If the reference is not within the field of the inventors' endeavor, it may still be considered if the reference is reasonably pertinent to the particular problem that the inventors faced.

You must next consider the differences, if any, between the prior art and each asserted claim. Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus on only the differences, because the test is whether the claimed invention as a whole would have been obvious

40

over all of the prior art.

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the claimed invention.  If you find that the available prior art shows each of the limitations of the asserted claims, you must determine whether it then would have been obvious to a person of ordinary skill in the art to combine or coordinate these limitations in the same manner as the asserted claims.  This is often referred to as "motivation to combine."  Motorola Mobility must show that a person of ordinary skill in the art would have had motivation to combine the prior art references in the same manner as the asserted claims and would have had a reasonable expectation of success in doing so.

A person of ordinary skill in the art is someone having the following qualifications.

**As to the '462 patent:**

An engineer with a Bachelor's Degree in electrical or computer engineering and one or more years of experience working with portable computing and/or communications devices or equivalent training and experience.

**As to the '464 and '054 patents:**

A person with a Bachelor's Degree or the equivalent in software engineering and one to two years of programming experience.

A patent composed of several limitations is not proved obvious merely by demonstrating that each of its limitations was independently known in the prior art.  You must determine whether a person of ordinary skill in the art has simply implemented a

41

predictable variation of prior art elements or, conversely, whether he or she has made an improvement that is more than the predictable use of prior art elements according to their established functions. When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product, not of innovation, but of ordinary skill and common sense. In that instance, the fact that a combination was obvious to try might show that it was obvious. Any need or problem known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason for combining the elements in the manner claimed. A person of ordinary skill in the art is also a person of ordinary creativity. In many cases, a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle. However, where the art is unpredictable, a focus on known elements may still present a difficult hurdle for one of skill in the art because the results of potential solutions may be unknown or unexpected.

In determining whether the asserted claims would have been obvious to a person of ordinary skill in the art and, therefore, are invalid, you should not apply any rigid test or formula. Rather, you should use your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known limitations to achieve predictable results.

In your analysis, you must be aware of the distortion caused by hindsight bias,

42

that is, of relying upon a hindsight combination of the prior art. Rather, you must cast your mind back to the time of the invention and consider whether the invention as a whole would have been obvious to a person of ordinary skill in the art, taking into consideration any interrelated teachings of the prior art, the effects of demands known to the design community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine any known elements in the fashion claimed by the patents at issue.

To prevail on its defense of invalidity by obviousness to a person of ordinary skill in the art at the time the inventions of the patents-in-suit were made, Motorola Mobility must prove, by clear and convincing evidence, that the asserted claims of the patents in suit were obvious in view of the following asserted prior art.

**As to claim 1 of the '462 patent:**

      a.     DTX 3, U.S. Patent No. 7,549,007 to Smith ("Smith") and Nelson (DTX 2).

**As to claim 8 of the '462 patent:**

      a.     Nelson (DTX 2);

      b.     Smith (DTX 3) and Nelson (DTX 2) and U.S. Patent No. 5,798,733 to Ethridge ("Ethridge").

**As to claim 10 of the '462 patent:**

      a.     Nelson (DTX 2) and DTX 122, U.S. Patent No. 5,798,733 to Ethridge;

43

b.      Nelson (DTX 2), Smith (DTX 3), and Ethridge (DTX 122).

**As to claim 11 of the '462 patent:**

a.      Nelson (DTX 2);

b.      Kobayashi (DTX 61);

c.      Smith (DTX 3) and Nelson (DTX 2).

**As to claim 13 of the '462 patent:**

a.      Nelson (DTX 2);

b.      Kobayashi (DTX 61);

c.      Smith (DTX 3) and Nelson (DTX 2).

**As to each of claims 151, 159, 181, and 189 of the '054 patent:**

a.      1984 CompuServe book (DTX 94) and Jones 1987 (DTX 146);

b.      Use of CompuServe and Jones 1987 (DTX 146).

**As to each of claims 162 and 192 of the '054 patent:**

a.      1984 CompuServe book (DTX 94) and Jones 1987 (DTX 146);

b.      1984 CompuServe book (DTX 94) and Jones 1987 (DTX 146) and
DTX 149, Dennis Reynolds, "Evaluating Dial-Up Internet Access Options,"
Computers In Libraries, Sept. 1993 ("Reynolds 1993").

c.      1984 CompuServe book (DTX 94) and Jones 1987 (DTX 146) and
CompuServe Press Release (DTX 151);

d.      1984 CompuServe book (DTX 94) and Jones 1987 (DTX 146).

**As to each of claims 16 and 17 of the '464 patent:**

44

a.  Bowen & Payton, "How to Get the Most Out of CompuServe," 5th ed., 1991 ("1991 CompuServe Book") (DTX 153);

b.  CompuServe Press Release (DTX 150);

c.  CompuServe Announcement (DTX 151).

## OBJECTIVE CRITERIA CONCERNING NON-OBVIOUSNESS

## (SECONDARY CONSIDERATIONS)

In making your decision **only** as to the obviousness or non-obviousness of the asserted claims, you should consider the objective evidence which may tend to show non-obviousness of the claims at issue, including the following:

(1)     Commercial success or lack of commercial success of products covered by the asserted claims;

(2)     Long-felt but unsolved needs;

(3)     Praise of the invention by others in the field; and

(4)     The taking of licenses under the patent by others.

In your determination of obviousness, then, you must consider whether Intellectual Ventures has demonstrated not only that such secondary considerations exist, but also whether Intellectual Ventures has proven that there is a sufficient nexus between the considerations and the claimed invention.  In other words, Intellectual Ventures must show that the claimed inventions of the patents-in-suit contributed to these secondary considerations, rather than the considerations being due to other features of something else.

For example, if commercial success is due to market position, advertising, promotion, salesmanship of the like, or is due to features of the products other than those described in the asserted claims, then any commercial success may have no relation to the issue of obviousness.

46

In this case, Intellectual Ventures has the burden of proving any secondary consideration issues by a preponderance of the evidence.  Should Intellectual Ventures not meet this burden, you must make your obviousness determination based only on the scope and content of the prior art, any differences between the claimed invention and the prior art, and the level of ordinary skill in the art.  Should Intellectual Ventures demonstrate that there are secondary considerations of nonobviousness, these may also be considered.  Ultimately, as I stated earlier, it is at all times Motorola Mobility's burden to demonstrate obviousness by clear and convincing evidence.

## WRITTEN DESCRIPTION

The patent law contains certain requirements for the part of the patent called the specification, which is the entirety of the patent before its claims.  Motorola Mobility contends that the asserted claims of the '054 patent are invalid because the specification of the patent does not contain an adequate written description of the invention claimed.  To succeed, Motorola Mobility must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of any claimed invention.

In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued.  An applicant may amend the claims or add new claims.  These changes may narrow or broaden the scope of the claims.  The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether a patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is not satisfied unless a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally described in the issued patent and that the inventor actually possessed the full scope of the invention by the filing date of the original application.

48

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

## ENABLEMENT

The patent law contains another requirement for the part of the patent called the specification. Motorola Mobility contends that the asserted claims of the '054 patent are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention. To succeed, Motorola Mobility must show by clear and convincing evidence that the '054 patent does not contain a sufficiently full and clear description of the claimed invention. To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of the technology of the patent to make and use the full scope of the claimed invention at the time the patent application was filed. This is known as the"enablement" requirement. If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. A patent specification need not include the information already known to and available to one of ordinary skill in the art. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field;

50

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field;

(6) the level of ordinary skill in the field;

(7) the scope of the claimed invention; and

(8) the state of the prior art.

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of the claimed inventions and the state of the art at the time of the patent application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

51

## DELIBERATION AND VERDICT

### INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 5-5, or 8-2, or whatever your vote happens to be. That should stay secret until you are finished.

## UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you a series of questions about the parties' claims.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and

53

responsibility of the jury.

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to

want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day. You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess. You may not read or listen to any news about the case in a newspaper, online or on television during the evening recess.

You may talk about the case only while you are in the jury room and everyone on the jury is present. Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:00. You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:00 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question during this time, you probably will not get an answer right away because we are all going to be stepping away from our phones.

56

## COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.

57