IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I, LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>MOTOROLA MOBILITY LLC,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 11-908-SLR |

**ORDER**

At Wilmington this 13th day of March, 2015, having conferred with counsel at the pretrial conference, and having reviewed the materials subsequently submitted by counsel;

IT IS ORDERED that:

1. Plaintiffs are not permitted to introduce evidence that other entities have taken licenses and/or been granted covenants not to sue (either as licensees, subscribers, or investors in plaintiff's fund) with respect to portfolios or other groups of patent assets that include one or more of the asserted patents. In the 2014 trial, the court's decision to allow evidence of licensing as proof of secondary considerations of obviousness was balanced by the fact that both parties discussed plaintiffs' business model, including the fact that plaintiffs market and license patents. (D.I. 133 at 146:22-148:13; *id.* at 166:17-20) As discussed during the pretrial conference, neither party intends to discuss plaintiffs' business model in the present case. Accordingly, any discussion of plaintiffs' portfolio licensing scheme in which the "R-Ranking" system provides a nexus to the

patents-in-suit is inappropriate given that such evidence necessarily invokes a discussion of plaintiffs' business model.

    2. Plaintiffs are permitted to introduce arguments regarding doctrine of equivalents for the '450 patent. In its motion for summary judgment of non-infringement, defendant argued that due to prosecution history estoppel, plaintiffs "may not now invoke the doctrine of equivalents to encompass methods of allocation, such as implemented by the Motorola devices at issue, that are not responsive to at least one field in the packet header." (D.I. 253 at 19) Plaintiffs responded that defendant's phones do satisfy the "responsive to at least one field in the packet header" limitation, but plaintiffs did not directly address the doctrine of equivalents argument. (D.I. 267 at 13) The court denied Motorola's motion for invalidity because it was premised on a construction of "allocating is responsive to at least one field in the packet header" that was not ultimately adopted by the court. (D.I. 284 at 59-60) Consequently, the court did not reach the question of whether plaintiffs may use a doctrine of equivalents argument for independent claim 1 of the '450 patent. Accordingly, plaintiffs are not now barred from presenting a doctrine of equivalents argument regarding dependent claim 8.

    3. The court is not prepared to rule on the merits of defendant's divided infringement defense in the context of a discussion on pretrial evidentiary issues. The issue presented by defendant is whether plaintiffs should be permitted to present the argument that "Motorola direct infringes (through its own acts)" (D.I. 356 at 13), when plaintiffs' invalidity expert allegedly failed to demonstrate how Motorola controls all the devices in the asserted claims. Specifically, independent claims 10 and 41 of the '144 patent require a "first device" to send a "single combined file" to a "second device," after

which an "authenticating device" generates a delivery report. ('144 patent at col. 38:46-39:26; 44:61-46:17) The court construed "authenticating device of the communications network" as "**a third-party** authenticating device within the communications network that generates a delivery report." (D.I. 284 at 19) (emphasis added) Consistent with this construction, plaintiffs' invalidity expert only addresses third-party multimedia message service centers of operating the authenticating device. (D.I. 390 at ¶¶ 7-13) The court declines to reach an opinion on the propriety of plaintiffs' infringement position at this time, but merely reiterates that experts are limited by their reports and the parties are expected to present arguments to the jury consistent with the evidence and with the court's claim construction.

4. Similarly, the court is not prepared to limit the "central processor" to the scalar chip in the LapDock as opposed to the microprocessor embedded within the scalar chip. In his expert report, defendant's expert did not distinguish between the scalar chip itself and the embedded microprocessor, arguing both that "Lapdocks have a scaler which is a central processor" (D.I. 388, ex. A at ¶ 70) and that there is "a microprocessor embodied within a video scaler chip in the LapDock that controls the video display on the LapDock" (D.I. 388, ex. B at ¶ 5). In the 2014 trial, both parties' experts instead focused on whether the LapDock has a central processor, not whether the central processor is most properly embodied by the scalar chip or the scalar chip's microprocessor. (D.I. 336 at 886:6-889:4; D.I. 340 at 1551:4-13) Should the distinction sought by plaintiffs become relevant at a later stage of the present litigation, the court will give the matter further consideration.

_____
United States District Judge

3