**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

INTELLECTUAL VENTURES I LLC and
INTELLECTUAL VENTURES II LLC,

        Plaintiffs,

        v.

MOTOROLA MOBILITY, LLC,

        Defendant.

C.A. No. 11-cv-908-SLR-MPT

---

**INTELLECTUAL VENTURES' OPPOSITION TO**
**DEFENDANT'S RULE 59(A) MOTION FOR**
**NEW TRIAL ON THE '462 PATENT**

Dated: May 22, 2015

Margaret Elizabeth Day (admitted *pro hac vice*)
David L. Alberti (admitted *pro hac vice*)
Marc Belloli (admitted *pro hac vice*)
Sal Lim (admitted *pro hac vice*)
Yakov Zolotorev (admitted *pro hac vice*)
Nickolas Bohl (admitted *pro hac vice*)
FEINBERG DAY ALBERTI & THOMPSON LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
(650) 618-4360
eday@feinday.com
dalberti@feinday.com
mbelloli@feinday.com
slim@feinday.com
yzolotorev@feinday.com
nbohl@feinday.com

Brian E. Farnan (#4089)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

*Attorneys for Plaintiffs Intellectual Ventures I LLC*
*and Intellectual Ventures II LLC*

# TABLE OF CONTENTS

Page

I.  IV'S EXPERT DID NOT OPINE OUTSIDE THE SCOPE OF HIS REPORTS ........ 1

  A.  Regarding Validity, IV's Expert Gave The Exact Same Opinions At Trial As In His Expert Report ................................................................................................. 1

  B.  IV's Expert Gave The Same Testimony At Trial As He Did In His Expert Report Regarding The Central Processor In The Accused Phones Controlling The Display Of The Lapdocks ....................................................................................... 3

II.  THERE WAS NO "POISONING OF THE WELL" BY IV ........................................ 5

  A.  Motorola, Not IV, Litigated The Issue Of Copying And Cannot Now Complain Of The Statements And Arguments It Itself Made Or Elicited.................................... 6

  B.  The Inventor's CES Award Is Not A Grounds For A New Trial ............................ 8

  C.  Motorola's "Withdrawal Of Evidence" Argument Is Untrue And A Mischaracterization Of The Record........................................................................ 9

III. IV'S EXPERT PROPERLY APPLIED THE COURT'S CONSTRUCTION OF "CENTRAL PROCESSOR"................................................................................... 10

  A.  Motorola Has Waived Any Argument That IV Did Not Properly Apply The Court's Construction Of The Term "Central Processor"....................................... 11

  B.  IV Applied The Court's Claim Construction To Show That There Was No Central Processor In The Lapdocks That Performed The Primary Computational Functions Of The System Such As Running An Operating System And Applications ....................................................................................................... 12

  C.  The Claimed System Has A Central Processor In The Handset And It Is Irrelevant Whether Systems Outside Of Claim 1 Have Multiple Central Processors ........... 15

  D.  The Claimed System Has A Central Processor In The Handset And It Is Irrelevant Whether Systems Outside Of Claim 1 Have Multiple Central Processors ........... 17

IV. THE VERDICT WAS NOT AGAINST THE CLEAR WEIGHT OF THE EVIDENCE............................................................................................................ 18

V.  CONCLUSION ....................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

CASES

*Finjan, Inc. v. Symantec Corp.*, C.A. No. 10-593-GMS, 2013 WL 5302560
  (D. Del. Sept. 19, 2013) ............................................................................................... 18

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)................................................................................... 18

*Intellectual Ventures v. Canon, Inc.*, C.A. No. 11-792-SLR, D.I. 379
  (D. Del. May 18, 2015)................................................................................................. 15

*Invista N. Am. S.A.R.L. v. M & G USA Corp.*, 35 F. Supp. 3d 583
  (D. Del. Mar. 31, 2014)................................................................................................. 18

*Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052 (Fed. Cir. 2005)...................... 15

*Lazare Kaplan Intern., Inc. v. Photoscribe Tech., Inc.*,
  628 F.3d 1359 (Fed. Cir. 2010)...................................................................................... 3

*Levy v. Schmidt*, 573 Fed. App'x 98 (3d Cir. 2014) ......................................................... 18

*MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159 (Fed. Cir. 2015) ........................... 5

*MobileMedia Ideas, LLC v. Apple Inc.*, 966 F. Supp. 2d 439 (D. Del. 2013) ........ 5, 6, 8, 9

*Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461 (Fed. Cir. 1997) .................. 6, 8

*Murray v. Fairbanks Morse*, 610 F.2d 149 (3d Cir. 1979).............................................. 12

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
  308 F.3d 1167 (Fed. Cir. 2002)...................................................................................... 5

*Waldorf v. Shuta*, 142 F.3d 601 (3d Cir. 1998)........................................................... 4, 12

*ZF Meritor, LLC v. Eaton Corp.*, 769 F. Supp. 2.d 684 (D. Del. 2011)............................ 5

There is no basis for a third trial on the '462 patent.   Not only are each of Motorola's arguments in support of a new trail incorrect, several of them were waived.  Motorola's motion should be denied.

I.      **IV'S EXPERT DID NOT OPINE OUTSIDE THE SCOPE OF HIS REPORTS**

   A.  **Regarding Validity, IV's Expert Gave The Exact Same Opinions At Trial As In His Expert Report**

IV's expert gave *exactly* the same opinion at trial that he did in his report with regards to the validity generally, and the Smith and Nelson references specifically. *Compare* Trial Tr. 512:18-524:23 (direct examination on validity), 551:25-552:8 (re-direct examination on validity) *with* Ex. A[1], Expert Report of Donald Alpert, Ph.D. Concerning Validity of U.S. Patent Number 7,120,462 at 7.2.2 - 7.2.3[2], 7.7.2[3], 8.18.3[4], 8.18.5-8.18.7[5], 8.21.3[6], 8.21.10 and footnote 16[7], 8.35.1-8.35.4.[8]

With regards to Smith, Dr. Alpert testified (and opined in his report) that: (1) Smith teaches a functional computer to which a cellphone can be attached where the computer controls the phone (Trial Tr. 512:24-513:7; Ex. A at 7.7.2 and 8.21.10); and, (2) the cellphone in Smith

_____

[1] "Ex. __" refers to the Exhibits attached to the Declaration of Michael J. Farnan in Support of Intellectual Ventures' Opposition to Defendant's Rule 59(a) Motion for New Trial on the `462 Patent.
[2] Describing Nelson and its claimed advantages.
[3] Describing Smith.
[4] "The Drabik Report provides no reason that a person of ordinary skill in the art would replace the processor, hard drive, and memory module with a telephone handset."
[5] Explaining that Nelson teaches away from using module with the features of telephone handset.
[6] Explaining that the Nelson module should not include handset features, such as those in Smith.
[7] Explaining that the 8088 processor in the Smith handset is not capable of running a full-blown computer, and that Smith does not disclose using the handset or its processor to control anything in the computer.
[8] Discussing the combination of Nelson, Smith and Ethridge.

does not have the ability to control anything in a laptop which means that claim element 1B[9] is

not present in Smith (Trial Tr. 513:8-516:1; Ex. A at 8.21.10 and footnote 16).

With regards to Nelson, Dr. Alpert testified (and opined in his report) that:  (1) Nelson

teaches a way to partition components of a computer system that involves a removable module

that has a processor, memory and disk drive but is not operable alone (Trial Tr. 516:2-24; Ex. A

at 7.2.2-7.2.3); (2) the module in Nelson does not meet the "independently operable"

requirement nor the interfaces requirement of claim 1 and thus does not disclose claim elements

1A[10] or 1B (Trial Tr. 516:20-519:12, 520:6-521:14; Ex. A at 7.2.2-7.2.3, 8.12.3-8.12.9); and, (3)

it would not be obvious to one of ordinary skill in the art to replace the module in Smith with _any_

cellphone because:

> . . . any cellphone would have – the keypad would have a display and would therefore not follow what Nelson taught, and in fact it would defeat the purposes that I identified for Nelson:  The extra cost from duplicated resources, the keyboard of the display.  You would have what's called suboptimal kind of comprised human interface, and therefore someone reading Nelson would recognize that the module would not be replaced by a cellular phone.

Trial Tr. 519:13-520:5; Ex. A at 8.18.6.[11]

---

[9] Claim element 1B reads:  "a portable docking display unit dimensioned substantially larger than said detachable handset unit, said portable docking display unit including a first display and a plurality of second circuits, said plurality of second circuits not including a central processor and including a video interface, and a data input interface, and wherein said central processor controls the operation of at least one of said second circuits and said first display when said detachable handset unit is docked with said docking display unit."

[10] Claim element 1A reads:  "a detachable handset unit sized for handheld grasping and including a central processor and a plurality of first circuits, said processor controlling the operation of said first circuits, and said first circuits including at least a video interface, a communication interface and a data input interface."

[11] "Nelson teaches that the module should include functions that are common to a desktop and portable PC, and exclude those functions that differ between a desktop and portable PC, such as those relating to the display and keyboard.   … Consequently, it would be necessary to duplicate the functions required for desktop and portable PCs within the module or between the module and base unit; either of these approaches goes against the benefits taught by Nelson's disclosure by increasing system cost."

The only opinion that Motorola contends is somehow outside the scope of Dr. Alpert's report is point (3) above with respect to Nelson. D.I. 443 at 2. But this opinion was squarely within Dr. Alpert's report and was presented at the first trial and any argument to the contrary is unsupportable. The report is clear that one skilled in the art would not replace the Nelson module with any telephone handset because Nelson teaches away from including handset function interfaces in the portable module. Ex. A at 8.18.3, 8.18.6. Therefore, both times, Dr. Alpert opined that it was not obvious for the module in Nelson to be replaced with a cellphone of any kind. In light of the foregoing, there is not a single statement that is even arguably outside of Dr. Alpert's prior opinions in his report.

Motorola's assertion that "***using Smith's*** detachable handset with Nelson's docking display unit" is not addressed in Dr. Alpert's validity report is true, but irrelevant. D.I. 443 at 2. Dr. Alpert testified perfectly consistently with his report.[12] As shown above, he showed that claim element 1B was missing from Smith, that claim elements 1A and 1B were both missing from Nelson, and that a person of ordinary skill in art would not be motivated to use ***any*** handset in place of Nelson's module. There is absolutely no divergence between Dr. Alpert's reports and his trial testimony.[13]

> **B. IV's Expert Gave The Same Testimony At Trial As He Did In His Expert Report Regarding The Central Processor In The Accused Phones Controlling The Display Of The Lapdocks**

---

[12] When asked by Motorola's counsel, Dr. Alpert conceded that he did not present an opinion about combing the *specific* handset in Smith with the docking station in Nelson. Trial Tr. 551:10-19. Rather, he testified one of skill would not put any handset (Smith or otherwise) into Neson.

[13] In the second to last sentence of this section of Motorola's corresponding brief, Motorola cites to 550:4-551:5. The testimony in this passage has nothing to do with Smith, Nelson or Motorola's purported combination of the two. Regardless, if Motorola is implicitly trying to argue that this testimony was outside the scope of Dr. Alpert's report, Motorola is wrong. *See* Ex. A at 9.2. Moreover, this is cross testimony, so it was elicited by Motorola not IV and therefore not grounds for a new trial.

At trial there was never an objection to the testimony of IV's expert regarding the central processor in the phones controlling the display of the Lapdocks in claim limitation 1B.[14]  As such, Motorola waived any such argument that a new trial is warranted.  *See*, *e.g.*, *Waldorf v. Shuta*, 142 F.3d 601, 629 (3d Cir. 1998).

Regardless, the testimony of IV's expert on this point is squarely within the bounds of his reports.  *Compare* Trial Tr. 318:6-12, 335:12-338:11, 342:1-348:7, 396:17-399:4 *with* Ex. B Expert Report of Donald Alpert, Ph.D. Concerning Infringement of U.S. Patent Number 7,120,462 at 8.6, 8.7, 8.8.1-2, 8.15.1, 9.7.11, 9.7.21-25.  Specifically, Dr. Alpert's opinion has always been that the central processor in the phone controls the scaler and all video content that appears the display on the Lapdock, which would include showing the screen of the phone on the Lapdock, the browser, the screen saver or anything else.  *Id.*  He painstakingly went through PTX-217 – a block diagram of the system – and showed how the central processor in the phone is in control and sending the content that should be displayed on the screen regardless of what that content is.  *Id.*  And Dr. Alpert confirmed through his analysis, with the support of Motorola's own witness, that the Lapdocks cannot control the display because they cannot operate on their own and their function is limited to charging the battery without the processor from the handset being attached.  *Id.*  Motorola also never disputed element 1C. Trial Tr. 348:8-10.

---

[14] Indeed, there was never an issue that the central processor in the phones controlled the display of the Lapdocks and this limitation was never contested by Motorola or its expert at trial (or even in discovery).  This is a new non-infringement theory that was not discussed at trial that Motorola is bringing post trial in its Rule 50(b) motion. D.I. 445 at 18-19.  It is also presenting this new theory here too couched as a new opinion from IV somehow.  It is surprising that Motorola is seeking to inject new issues for the first time after this patent has twice been tried to a jury.

There is no divergence, no dichotomy and no inconsistency between the testimony at trial (which was not objected to) and Dr. Alpert's report on this ***uncontested*** part of claim limitation 1B.  Motorola is simply trying to create new positions in this case after the fact.[15]

## II.     THERE WAS NO "POISONING OF THE WELL" BY IV

Motorola does not cite a single case in support of its argument that a new trial is warranted because of any statement or evidence related to (1) copying or (2) the inventor's award at CES.  Moreover, despite citing four bases on which a new trial may be granted, the only basis for Motorola's request is "where improper conduct by an attorney or the court unfairly influenced the verdict."  D.I. 443 at 1 (quoting *ZF Meritor, LLC v. Eaton Corp.*, 769 F. Supp. 2.d 684, 690 (D. Del. 2011)).  Here, there was no such conduct.  But, assuming there was, "[a] new trial motion based on allegedly improper statements by counsel 'may be granted only where the improper statements made it reasonably probable that the verdict was influenced by prejudicial statements.'"  *MobileMedia Ideas, LLC v. Apple Inc.*, 966 F. Supp. 2d 439, 474 (D. Del. 2013) (quoting *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1182 (Fed. Cir. 2002) (applying Third Circuit law)), *rev'd in part on other grounds, MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159 (Fed. Cir. 2015).

Motorola ignores the standard that governs this issue because it cannot meet it.  At its core, Motorola is arguing that IV argued about two irrelevant issues and related evidence.  D.I. 443 at 4-6.  But even if that were true, as Motorola is undoubtedly aware, district courts and the Federal Circuit "find it highly doubtful that such isolated irrelevancies are 'so grievous as to

---

[15] In passing Motorola argues that the testimony regarding the screen saver was not within the confines of the report of IV's expert.  It was for the reasons stated above in this section.  And, regardless, Dr. Alpert testified regarding the screen saver functionality in the prior trial.  Jan. 30, 2014, Trial Tr. 1559:6-1562:18.  No objection from Motorola in this trial either.

have rendered the trial unfair'"" such that a new trial is warranted.  *See, e.g., Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1469-70 (Fed. Cir. 1997).

### A. Motorola, Not IV, Litigated The Issue Of Copying And Cannot Now Complain Of The Statements And Arguments It Itself Made Or Elicited

Motorola fails to provide a proper chronology on this so-called copying issue.  "Copying" was an issue that Motorola litigated, not IV.  And nothing that IV or its counsel did made it "reasonably probable that the verdict was influenced by prejudicial statements."  *MobileMedia Ideas, LLC*, 966 F. Supp. 2d at 474.  Thus, Motorola provides no basis for a new trial and there is none.

Here is the record on the so-called copying issue during the presentation of evidence:

First, in response to a question regarding the work he did at his company, the inventor testified that while they were developing products they were also filing for patents on their work because as a small company it was a good idea to seek patent protections because their ideas "could get copied" and that it was a way to "stop others from copying."  Trial Tr. 160:13-161:4. This testimony is not a statement by IV or its counsel and does not even go to copying by Motorola or anyone else – it simply is a statement of why the inventor sought patent protection. Motorola did not object to this testimony.

Second, in response to a question about what made the inventor think of his invention when he saw the accused product, he testified about how they operated the same and then made an unsolicited comment at the end – "It basically – they couldn't have copied it better."  Trial Tr. 184:7-13.  This too is not a statement by IV or its counsel and IV and its counsel never referred to or made an argument regarding this statement at any point in the trial.  It was also not objected to.  Motorola easily could have moved to strike the last part of this answer as non-responsive but chose not to.

Third, despite IV not arguing copying, Motorola chose to affirmatively inject the issue into the case by questioning its own corporate engineer/representative, Mr. Barber, about copying. In particular, Motorola asked point-blank questions whether he copied and whether he saw "anything from [his] team where they copied anything from Mr. Kumar." Trial Tr. 290:25-291:10. Motorola also questioned IV's expert whether he had an opinion on copying even though IV's expert did not say a thing about copying during his direct examination. *Id.* at 367:1-5.[16] These are direct questions regarding copying coming from Motorola's counsel even though neither IV nor its counsel ever asked about copying or argued the issue during its case-in-chief or in rebuttal.

The foregoing is the complete record of evidence on this issue. In closing, IV made no statement regarding copying or reference to copying during its initial presentation. Trial Tr. 556:12-586:16. Motorola's counsel then stood up and, near the beginning of his closing, discusses the issue of copying and how the record shows that Motorola did not copy. *See*, *e.g.*, Trial Tr. 587:23-25 ("And one of the thing that we're fighting about is this issue of, okay, did Motorola really take Mr. Kumar's idea? Did we copy him?"). Motorola's counsel then highlighted the so-called copy evidence:

> That's why we had Mr. Barber come here. He was the man responsible for this. He was the project lead. And that's why I asked him directly, so you guys could look and see him and evaluate his credibility. You got to look him in the eye, see how he testified.
> I asked him directly: ***Did you copy anything from Mr. Kumar? No. Did you see anything from your team where they copied anything from Mr. Kumar? No. No. We didn't take anything.***

Trial Tr. 589:4-15. Motorola's counsel then argued that IV "wants to cast aspersions on my client" with copying allegations (Trial Tr. 589:24-590:2) even though – after IV's first closing

---

[16] This confirms that IV was not arguing copying and not making improper statements regarding copying.

statement – neither IV nor its counsel has made any statement, or asked any question, regarding copying.

After all of Motorola's questions on copying and its repeated arguments on copying in closing, IV's counsel – for the first and only time – makes reference to this so-called copying issue.  Trial Tr. 611:22-612:1.  And all counsel said – in less than 6 lines – is that it is neither here nor there because IV has met its burden on infringement and they can weigh the evidence that Motorola itself introduced.  *Id.*

This single statement by IV's counsel was not improper, was innocuous and in no way was "so grievous as to have rendered the trial unfair" or "reasonably probable that the verdict was influenced by prejudicial statements."  *Motorola, Inc.*, 121 F.3d at 1469-70; *MobileMedia Ideas, LLC*, 966 F. Supp. 2d at 474.  To the extent the so-called copying issue influenced the jury, it was Motorola's questions on copying and its repeated arguments in closing.  Motorola cannot inject an issue, litigate it during the presentation of evidence, raise the issue in closing and then seek a new trial.

### B.  The Inventor's CES Award Is Not A Grounds For A New Trial

The inventor testified as to the award he won for his invention at CES and the actual physical award was moved into evidence.  Trial Tr. 172:16-175:4; PTX-314.  Motorola did not object to this testimony or when the award itself was moved into evidence.  Trial Tr. 172:22-173:4 ("Mr. Stockwell:  No objection, Your Honor.").  At no point during the entire case did IV ever state that the claims of the '462 patent were not obvious because of this award – not in opening, not through its witnesses and not in closing.  And while the existence of the award was discussed in opening, introduced by the inventor and discussed in closing – it was never discussed in relation to the claims not being obvious because of the award.  Therefore, there were no improper statements by IV, much less statements that make it "reasonably probable that the

verdict was influenced by prejudicial statements." *MobileMedia Ideas, LLC*, 966 F. Supp. 2d at 474.  This is particularly true when Motorola did not object to the introduction of the evidence.

That there was no jury instruction on secondary considerations reinforces that the statements concerning the award were not prejudicial because the statements regarding the award were not linked to the issue of obviousness, nor could they be under the Court's jury instructions. As a result, no corrective instruction was needed because there was nothing to correct regarding the un-objected to award.[17]  Trial Tr. 615:12-620:22.

These statements are also not prejudicial because ***Motorola itself introduced evidence that (1) the Lapdock was introduced at CES and (2) the Lapdock also won an award at CES***:

> Q.  Okay.  You also heard Mr. Kumar talk about a Consumer Electronics Show.
> Do you recall that?
> A.  Yes, I do.
> Q.  Was the lapdock released at the Consumer Electronics Show?
> A.  We used the, like, January 2011 as the time frame, so that show is where we
> introduced it to the public for the first time.
> Q.  Was the lapdock associated with any awards after that show?
> A.  Yes.  We won Best in Show at the Consumer Electronics Show.

Trial Tr. 291:11-23.  This is no different than the evidence that IV introduced regarding the inventor's CES award.  It is duplicitous of Motorola to argue that evidence of the inventors CES award (that it never objected to) warrants a new trial when Motorola introduced the exact same evidence – a CES award for the accused product.  The inventor's CES award is not a grounds for a new trial.

### C.  Motorola's "Withdrawal Of Evidence" Argument Is Untrue And A Mischaracterization Of The Record

On page 5 of its brief, Motorola cites to Trial Tr. 493:23-494:24 and argues that "[a]fter poisoning the well with these copying allegations and unsupported praise evidence, Plaintiffs'

---

[17] It is also irrelevant that IV withdrew its proposed jury instructions on secondary considerations during the prayer conference.  Trial Tr. 493:23-494:24.  Again, IV never tied the award to any statement or argument that the claims were not obvious because of the award.

counsel voluntarily withdrew that evidence as supporting non-obviousness." D.I. 443 at 5. This is not true and a mischaracterization of the record. This passage is from the prayer conference and the only secondary considerations instruction at issue at the prayer conference that was discussed was "praise of the invention by others in the field." D.I. 418 at 33. There was no discussion of copying in the proposed secondary considerations instruction and, as demonstrated above, IV did not seek to introduce copying or argue it in the case; Motorola did. Moreover, IV did not "withdraw" any evidence that it actually did introduce – like the CES award. It simply agreed that it was no longer seeking a secondary considerations jury instruction. Trial Tr. 493:23-494:24. It is mischaracterizations like these that pervade Motorola's arguments for a new trial.

## III.   IV'S EXPERT PROPERLY APPLIED THE COURT'S CONSTRUCTION OF "CENTRAL PROCESSOR"

Motorola incorrectly argues that IV "ignored this Court's construction of the crucial term – 'central processor' – and instead offered its 'interpretation of that construction to the jury." D.I. 443 at 1, 6-13. IV, through its expert, applied the Court's construction to the facts of the case and demonstrated, as the jury properly found, that the Lapdocks do not have a central processor. The Lapdocks may have certain processors, but they do not have central processors under the Court's construction or otherwise. *See*, *e.g.*, Trial Tr. 220:4-15 (Motorola's representative admitting this point).

With this series of arguments regarding the term "central processor" what Motorola is really attempting to do is to contradict the Court's construction with a new theory that *any* processor that controls the operation of circuits is "the part of a computer system that performs the primary computational functions" and is thus a "central processor." D.I. 443 at 6 ("Rather, the Court's construction explicitly provides that controlling the operation of various circuits is an

example of performing the primary computational functions . . . Thus, if a component in a computer system controls the operation of various circuits, then the component satisfies the Court's construction.").  This is a strained and warped reading of the Court's construction by Motorola and an attempt to reargue claim construction by focusing on the "e.g." part of the construction and ignoring what precedes it.

Read in its full context, the Court's construction – "the part of the computer system that performs the primary computational functions, e.g., to control various circuits" – does not cover a garden variety processor that controls circuits.  Indeed, all processors control circuits, which claim 1 itself recognizes.  The "portable docking display unit" has a "plurality of second circuits" where only "at least one of said second circuits" need be controlled by the handset's central processor.  Therefore, the claim itself allows for the possibility of other processors (albeit not a central processor) to control certain circuits.  What makes a processor a **_central_** processor within the Court's construction is if it is "**_the_** part of the computer system that **_performs the primary computational functions_**" to control other circuits.  D.I. 284 at 65.

Motorola's new interpretation of the term "central processor" – which goes against the Court's construction – would literally read on all processors (and not just central processors) because all processors control circuits.  Motorola cannot read out the word "central" from the term "central processor" post-trial.

As set forth below, IV properly applied the Court's claim construction. Motorola never made any objection to IV's testimony or arguments regarding "central processor" or examples of primary computational functions at trial.  Such arguments have been waived for purposes of a Rule 59(a) motion.

**A.  Motorola Has Waived Any Argument That IV Did Not Properly Apply The Court's Construction Of The Term "Central Processor"**

Never did Motorola object or argue that IV somehow ignored the Court's construction of central processor and substituted and applied its own construction. Post-trial is the first time. By failing to raise this argument, allowing the case to go the jury and now for the first time arguing that an order regarding claim construction was somehow violated, Motorola waived any such argument. *See, e.g.*, *Waldorf v. Shuta*, 142 F.3d at 629 (citing *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979) (holding that "[c]ounsel's failure to object precludes him from seeking a new trial on the grounds of impropriety of opposing counsel's closing remarks")).

Motorola's argument is also ironic and belied by its arguments and the events of the first trial on the '462 patent. At the first trial, Motorola made arguments and proffered opinions that clearly contradicted the Court's claim construction of the term "detachable handset." Jan. 29, 2014 Trial Tr. 935:13-9:36-1; 958:16-967:21. Motorola argued that it would be "devastating" for the Court to change the construction or instruct the jury that Motorola's arguments were wrong after it had made them during trial. Jan. 30, 2014 Trial Tr. 1489:22-1490:13. The Court agreed not to change or clarify the construction and the case ended in a mistrial. Jan. 30, 2014 Trial Tr.1491:18-1492:10; Feb. 5, 2014 Trial Tr. 1953:24-1955:9. Following the mistrial, the Court made clear that Motorola's arguments concerning the term "detachable handset" were wrong. D.I. 366. If there is to be any symmetry between how the first trial and the second trial were handled concerning how the parties applied the Court's constructions, Motorola's motion for new trial fails regardless of whether IV made an argument that runs counter to the Court's construction of "central processor." However, IV did not improperly use the Court's claim construction as demonstrated in the sections below.

**B. IV Applied The Court's Claim Construction To Show That There Was No Central Processor In The Lapdocks That Performed The Primary Computational Functions Of The System Such As Running An Operating System And Applications**

As explained above, Motorola is now arguing that the Court's construction of "central processor" reads on *all* processors and therefore the existence of any processor in a docking display meets the claim language. *See*, *e.g.*, D.I. 443 at 6 ("Rather, the Court's construction explicitly provides that controlling the operation of various circuits is an example of performing the primary computational functions . . . Thus, if a component in a computer system controls the operation of various circuits, then the component satisfies the Court's construction."). This is not true. Again, there is a difference between a regular processor and a "central processor." And what makes a processor a ***central*** processor within the Court's construction is if it is "***the*** part of the computer system that ***performs the primary computational functions***" to control other circuits. D.I. 284 at 65.

All IV's expert did was apply this construction to the accused products in order to show that (1) there is a processor in the accused phones that performs the primary computational functions of the system (*i.e.*, the combination of the handset and Lapdock); and (2) no such processor existed in the accused Lapdocks. Trial Tr. 322:17-21, 325:8-328:4, 334:11-338:21. And, in order to show that the processor in the accused phones did indeed perform the primary computational functions of the system, IV's expert gave examples of primary computational functions and showed how those were present in the Motorola phones but not in any processor in the Lapdock. Trial Tr. 326:2-327:14, 333:3-16, 335:12-336:21. Two of those examples are running an operating system and applications – which is the entire point of docking the phone in the display unit (*i.e.*, the combination of the phone and Lapdock that comprises "the system"). *Id*. The Lapdock is not a system by itself and it cannot do anything without the handset. Trial Tr. 341:3-15.

IV's expert was not "add[ing] non-existent limitations to the Court's construction." D.I. 443 at 6.  Rather, he was applying it to the accused products.  The only way to explain "primary computational functions" is to provide examples (or explain what constitutes a primary computational function) and apply it to the facts of the case.  That is exactly what IV's expert did.  He provided examples of primary computational functions, which Motorola never challenged.  Trial Tr. 326:13-17.  IV never said that running an operating system or applications is required in order to meet the construction in every circumstance.   IV provided examples of primary computational functions that could meet the construction.  Under Motorola's argument it would literally be impossible to apply a construction to the facts of a case because any application would necessarily result in what Motorola characterizes as an improper interpretation of a claim.  Claims are construed and then the constructions are applied to the facts.  That is what IV did and Motorola did not object – an implicit admission that the testimony was proper.  Motorola is taking another run at claim construction post-trial hoping the result will be different.

Finally, Motorola argues that the opinion of IV's expert that processors in the Lapdocks are not central processors because they do not perform the primary computational functions of the system, such as running an operating system or user applications, is not within the scope of his report.  D.I. 443 at 9-10.   This is not true.  Ex. B at 7.11, 7.24.   Moreover, the only processor that Motorola ever pointed to – through its expert – was the so-called scaler chip, which the jury rejected as a central processor.  The purported MSP430 chip was not even the subject of Dr. Drabik's testimony in Motorola non-infringement case.  Trial Tr. 402:12-506:22.  Motorola only argued that the processor was a central processor through its attorneys, which was actually refuted by IV even though it did not have to.  Trial Tr. 293:25-294:17.  Motorola cannot make a non-infringement argument for the first time at trial through attorney argument – particularly

when it involves the question of whether or not this chip is a central processor, an issue that was not vetted in discovery. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony."); *see also Intellectual Ventures v. Canon, Inc.*, C.A. No. 11-792-SLR, D.I. 379 (D. Del. May 18, 2015) (quoting same and granting a new trial because defense counsel "improperly played the role of expert witness by inferring from factual testimony that the accused devices do not meet the claim limitations"). Regardless, this theory was properly discarded by the jury.

IV's expert clearly, succinctly and convincing applied the Court's construction to show why the processor in the Motorola handsets that runs the operating system and applications was a central processor and that no such component in the Lapdocks was a central processor. Motorola never objected to any of this testimony and the jury properly agreed with IV.

### C. The Claimed System Has A Central Processor In The Handset And It Is Irrelevant Whether Systems Outside Of Claim 1 Have Multiple Central Processors

Motorola argues that IV and its expert argued that a computer system can only have one central processor and therefore somehow contradicted the Court's claim construction. D.I. 443 at 11-13. Not true. IV correctly showed that the claimed system has "a central processor," which is true. It is entirely irrelevant whether systems outside the claim can have more than one central processor – they can and IV never argued otherwise.

The claimed system has two primary components – (1) "a detachable handset" (which includes "a central processor) and (2) "a portable docking display unit" (which cannot have a central processor). JTX-2, claim 1. This is consistent with the Court's construction of "central processor" in the context of claim 1 which is "the part of the computer system that performs the primary computational functions, *e.g.*, to control various circuits" and can only be referring to

the central processor in the handset which is the only place a central processor is found in claim 1 (and confirmed by the title of the patent). This exactly what IV showed at trial. Specifically, IV showed that the Ladpocks do not have a central processor and that the corresponding handsets do. *See*, *e.g.*, Trial Tr. 217:14-19, 231:18-234:1, 330:5-7, 333:3-335:19, 347:3-348:10. In no way has IV presented argument contrary to Court's construction.

Contrary to Motorola's assertion, IV never argued that a computer system generally (*e.g.*, one that falls outside the scope of claim 1 of the '462 patent) could not have multiple central processors. Indeed, the two passages of testimony that Motorola cites (especially coupled with the surrounding text for context) make clear that the claimed system and the infringing system each has one central processor – the central processor in the phone, the one that does that primary computational functions. At 307:8-13 (only a part of which Motorola cites) it is clear that IV's expert is talking about the claimed central processor (which is on the phone) and is "the part" of the system that "performs the primary computational functions." Likewise, at 337:21-338:11 (only a part of which Motorola cites), it is clear that IV's expert is talking about the accused system and how it only has one central processor in the phone, which is consistent with the evidence of record. He is not saying that a computer system could never have two central processors – just that the claimed system has one in the handset and the infringing combination of the Motorola handset and docking station has one central processor as well. As a result, Motorola infringes.

That prior art systems did or not did not have multiple central processors is irrelevant. D.I. 443 at 11-12. If anything, by pointing to Smith and Ethridge and arguing that both had multiple central processors, Motorola is conceding that this art is irrelevant to the claims of the '462 patent. *Id.* IV never argued that any computer system with multiple components like Smith

could not have multiple central processors or that if a phone has a central processor it would be

impossible for a docking station to have a central processor.  Rather, all that IV argued,

consistent with the claim and the Court's construction is that the part of the accused system that

performs that primary computational functions of the handset/Lapdock combination is found in

the Motorola handsets and not the Lapdocks.  *See*, *e.g.*, Trial Tr. 217:14-19, 231:18-234:1,

330:5-7, 333:3-335:19, 347:3-348:10.

This is just another example of Motorola improperly trying to reargue claim construction

post-verdict.

### D.  The Claimed System Has A Central Processor In The Handset And It Is Irrelevant Whether Systems Outside Of Claim 1 Have Multiple Central Processors

Motorola's final argument makes clear that it is now (post-trial) arguing that *any*

processor meets the Court's construction of "central processor," thereby trying to read the word

"central" right out of the term.  D.I. 443 at 13 (". . . it is undisputed that the accused Lapdocks

[have two components] that are processors").  This belated and incorrect attempt to reargue

claim construction should be rejected.  Neither the prosecution history, the claim itself nor the

Court's construction, precluded the existence of *any* processor in the docking display.  They just

precluded a ***central*** processor from being in the docking display.  D.I. 284 at 64-66, 67-68.  And

the Court clearly made the distinction between a processor and a central processor in both its

discussion of the background of the patent and in analysis related to infringement.  *Id.*  But now

(again post-trial) Motorola is arguing that there can be no processors in claimed docking display.

This is simply not true.  It is just that there can be no central processor in the docking display.

This is the exact issue that was litigated pre-trial, on summary judgment and at two jury trials.

Motorola did not object to any testimony regarding the "central processor" limitation – which was the only disputed issue in the infringement case – because it knows that IV did not trespass on the Court's construction in its application of the term.

## IV.   THE VERDICT WAS NOT AGAINST THE CLEAR WEIGHT OF THE EVIDENCE

Finally, Motorola simply repeats the arguments from its Rule 50(b) motion at a high level and says that if the Court denies its arguments there, it should grant Motorola a new trial here under the "'less rigorous' new trial standard." D.I. 443 at 13-15. Tellingly, however, Motorola does not address the requirement that a new trial should be granted "only where a miscarriage of justice would result if the verdict were to stand." *Levy v. Schmidt*, 573 Fed. App'x 98, 105 (3d Cir. 2014). Because Motorola has not made this showing, its motion should be denied.

Motorola's motion should also be denied because it did nothing more than repeat the arguments in its Rule 50(b) motion, and courts routinely deny new trial arguments that are repetitive or parallel motions for judgment as a matter of law. *Invista N. Am. S.A.R.L. v. M & G USA Corp.*, 35 F. Supp. 3d 583, 607 (D. Del. Mar. 31, 2014); *Finjan, Inc. v. Symantec Corp.*, C.A. No. 10-593-GMS, 2013 WL 5302560, at *46 (D. Del. Sept. 19, 2013) *aff'd*, 577 Fed. Appx. 999 (Fed. Cir. 2014).

## V.   CONCLUSION

For at least these reasons, Motorola's motion should be denied.

Respectfully submitted,

Dated: May 22, 2015

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (#4089)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

Margaret Elizabeth Day (admitted *pro hac vice*)
David L. Alberti (admitted *pro hac vice*)
Marc Belloli (admitted *pro hac vice*)
Sal Lim (admitted *pro hac vice*)
Yakov Zolotorev (admitted *pro hac vice*)
Nickolas Bohl (admitted *pro hac vice*)
FEINBERG DAY ALBERTI & THOMPSON LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
(650) 618-4360
eday@feinday.com
dalberti@feinday.com
mbelloli@feinday.com
slim@feinday.com
yzolotorev@feinday.com
nbohl@feinday.com

*Attorneys for Plaintiffs Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*